332 F.Supp. 275 (1971)
Robert D. BRUSCA and Mary L. Brusca, his wife, et al., Plaintiffs,
v.
STATE OF MISSOURI ex rel. STATE BOARD OF EDUCATION, et al., Defendants,
John C. Danforth, Attorney General of the State of Missouri, Intervening Defendant.
No. 69 C 404(2).
United States District Court, E. D. Missouri, E. D.
September 28, 1971.
Edward C. Cody, Klutho & Cody, St. Louis, Mo., for plaintiffs.
Paul B. Rava and Albert J. Stephan, Jr., Lashly, Caruthers, Rava, Hyndman & Rutherford, St. Louis, Mo., for Missouri State Bd. of Ed., its Members and the Commissioner of Education.
John C. Danforth, Atty. Gen., D. Brook Bartlett, Asst. Atty. Gen., Gene *276 E. Voights, First Asst. Atty. Gen., Jefferson City, Mo., for State of Mo., Warren E. Hearnes, Governor, and intervening defendant John C. Danforth, Atty. Gen. of Mo.
Before MATTHES, Chief Circuit Judge, MEREDITH, Chief District Judge, and REGAN, District Judge.

MEMORANDUM OPINION
REGAN, District Judge.
This action by parents of children of school age and their minor children seeks declaratory, injunctive, and other relief based on the asserted invalidity of the provisions of the Missouri Constitution and implementing statutes which establish and provide for the funding of a free public school system and which prohibit the use of public funds to aid directly or indirectly religious or sectarian schools. Our jurisdiction is invoked under 28 U.S.C. §§ 1343(3) and 1331. A three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284. Presently before the Court are motions of defendants and intervening defendant Danforth to dismiss the amended complaint.
All parent-plaintiffs are taxpayers who "due to the dictates of their consciences and the practices of their religious and moral principles" wish to have their children attend private schools "offering certain religious and moral training as part of their curriculum and offering other amenities incident to religiously or morally oriented non-public schools in spite of the economic burdens of doing so." All of them are parents of pupils in non-public or parochial schools, and two sets of such parents also have some children attending public schools because of their inability to pay the necessary tuition for all of their children.
Article IX, Section 1(a) of the Constitution of Missouri requires the general assembly to "establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law." Section 5 of this Article provides for a public school fund, "the annual income of which shall be faithfully appropriated for establishing and maintaining free public schools, and for no other uses or purposes whatsoever." And Section 8 of Article IX expressly provides that "(n)either the general assembly, nor any county, city, town, township, school district or other municipal corporation, shall ever make an appropriation or pay from any public fund whatever, anything in aid of any religious creed, church or sectarian purpose, or to help to support or sustain any private or public school * * * or other institution of learning controlled by any religious creed, church or sectarian denomination whatever." It is these provisions of the Missouri Constitution which plaintiffs seek to invalidate and the enforcement of which they seek to enjoin unless and until the defendant officials "take action to extend the benefits of free education to all persons, regardless of * * * creed."[1]
The basic theory upon which plaintiffs ground their amended complaint is that the necessary effect of the Missouri constitutional provisions and implementing statutes is to prevent or at least seriously impair the free exercise by plaintiffs of their religion and to deny them the equal protection of the laws unless and until defendants take steps to subsidize with tax funds the religious schools to which the parent-plaintiffs wish to send their children.
The issue presented by the amended complaint is not so much what Missouri may do but what it must do in aid of religious education. Stated simply, parent-plaintiffs claim to be entitled, as a matter of federal constitutional right, to tax-raised funds for the purpose of affording *277 a religious education to their children. By their State Constitution, the people of Missouri have decided that they will not permit the use of state funds, directly or indirectly, in aid of religion or religious institutions. These provisions expressing the public policy of Missouri, are a bar to any financial assistance to plaintiffs unless they are held violative of either the Free Exercise Clause of the First Amendment or the Equal Protection guaranty of the Fourteenth Amendment.
Plaintiffs reason thusly: In compliance with Missouri's compulsory school attendance law, parent-plaintiffs have the constitutional right to select the school of their choice according to the dictates of their consciences and the practice of their religion, and such freedom of choice is "abridged, diminished and destroyed" by denying tax-supported educational benefits to those who do not choose to send their children to free public schools.
Plaintiffs argue from the premise that Pierce v. Society of Sisters, 268 U. S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, mandates freedom of choice based solely on religious grounds. The Court there held only that the Fourteenth Amendment precludes a state from compelling parents to send their children to public schools only, thereby unreasonably interfering "with the liberty of parents * * * to direct the upbringing and education of children under their control." 268 U.S. l. c. 534-535, 45 S.Ct. 573. "While one of the plaintiffs was indeed a parochial school [the other was a secular private school], the case obviously decided no First Amendment question but recognized only the constitutional right to establish and patronize private schools  including parochial schools  which meet the state's reasonable minimum curricular requirements." Mr. Justice Brennan, concurring, in School District of Abington Township, Pa. v. Schempp, 374 U.S. 203, 248, 83 S. Ct. 1560, 1585, 10 L.Ed.2d 844.
"It is precisely because the instruction is religious or related to a particular faith, whether one or another, that parents send their children to religious schools under the Pierce doctrine." Mr. Justice Rutledge, dissenting, in Everson v. Board of Education, 330 U.S. 1, 46, 67 S.Ct. 504, 91 L.Ed. 711. It is crystal clear from the amended complaint (and from plaintiffs' briefs in opposition to the motions to dismiss) that the "precise" reason parent-plaintiffs demand state aid in this case is to enable them to obtain a religious education for their children.
Of course, granted the right of parental choice between public and private schools, it necessarily follows that the state could not, without manifesting hostility rather than the "wholesome neutrality" commanded by the First Amendment, prevent a parent from choosing a sectarian-sponsored private school for no reason other than its substantial religious character. But a parent's right to choose a religious private school for his children may not be equated with a right to insist that the state is compelled to finance his child's non-public school education in whole or in part in order that he may obtain a religious education.[2]
*278 The most recent pronouncement of the Supreme Court, Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745, in our opinion forecloses any possibility of granting the relief which plaintiffs seek. In Lemon the Court struck down two different statutory schemes under which aid was given to parochial schools. Under the one, Pennsylvania gave financial support directly to the school to purchase, by way of reimbursement for the cost thereof, specified secular educational services such as teachers' salaries, textbooks and instructional material, and under the other, Rhode Island "supplemented" the salaries of the school's teachers of secular subjects. In each instance the statute created certain restrictions upon the use of the funds which were "designed to guarantee the separation between secular and religious educational functions and to ensure the State financial aid supports only the former. All these provisions are precautions taken in candid recognition that these programs approached, even if they did not intrude upon the forbidden areas under the Religion Clauses."
Lemon restated the three tests or criteria developed by the Court for determining whether a particular program offends the Religion Clauses of the First Amendment: First, that it have a secular legislative purpose; second, that its principal or primary effect be one that neither advances nor inhibits religion; and third, that the statute must not foster "an excessive government entanglement with religion."
The statutes there involved were invalidated under the third test, not only because of the excessive entanglement created by "comprehensive, discriminating, and continuing state surveillance," either presently required or necessarily implicit for the future, but also because of the "broader base of entanglement * * * presented by the divisive political potential of these state programs * * * aggravated * * * by the need for continuing annual appropriations and the likelihood of larger and larger demands as costs and populations grow."
Faced with this decision, plaintiffs now argue that some alternative program, such as tuition grants, could conceivably be devised which, so they contend, would be free of government entanglement. Wholly apart from the fact that "entanglement" comparable to that described in Lemon cannot realistically be avoided if plaintiffs are granted aid for parochial school purposes, particularly on a continuing basis, it is self-evident that both the purpose and effect of any statute appropriating tax-raised funds to assist parents in the "free exercise of their religion" would necessarily be to support religion.
In its consideration of the first test, the Supreme Court in Lemon accorded "appropriate deference" to the expressly stated legislative intent that the purposes of the statutes were "to enhance the quality of the secular education in all schools covered by the compulsory attendance laws. There is no reason to believe the legislatures meant anything else." In the present case, in which plaintiffs demand, as a matter of right, state aid for the very purpose of enabling them to give children an adequate religious education in sectarian schools, any plan to achieve that end would necessarily have a non-secular legislative purpose and thus fail to meet the first test.
*279 Nothing in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, relied on by plaintiffs, suggests a different result or implies that a state must finance or subsidize religious schools. That case did not involve any issue of direct or indirect state assistance to a religious organization. The Supreme Court therein held that a state may not constitutionally apply its eligibility provisions "so as to constrain a worker to abandon her religious convictions respecting the day of rest" in order to qualify for public welfare unemployment benefits. We see no analogy to the instant case. Plaintiffs make no contention that attendance at public schools is contrary to the basic precepts or tenets of their religion.
"This case is resolvable not in terms of what an individual can demand of government, but solely in terms of what government may not do to an individual in violation of his religious scruples. The fact that government cannot exact from (a citizen) a surrender of one iota of (his) religious scruples does not, of course, mean that (he) can demand of government a sum of money, the better to exercise them. For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." Sherbert v. Verner, 374 U.S. 398, 412, 83 S.Ct. 1790, 1798 (Mr. Justice Douglas, concurring).
We do not render advisory opinions nor sit in judgment on plans or statutes which have not yet been formulated or adopted. All that is here involved is whether the enactment of some program designed to assist a parent in educating his child religiously with the use of tax-raised money is mandated by the First Amendment. On this narrow issue we hold that to the extent the Religion Clauses of the First Amendment do not prohibit such financial aid, they do not require that it be given by the State.
Plaintiffs further contend that the provisions of the Missouri Constitution and statutes which limit the use of tax-raised funds to the State's public schools are violative of the Equal Protection Clause of the Fourteenth Amendment. We do not agree.
We find nothing arbitrary or unreasonable in the determination of the State to deny its funds to sectarian schools or for religious instruction. So long as no invidious discrimination exists, the courts may not interfere. Cf. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393. Here, there is no discrimination in the legal sense. All children of every or no religious denomination have the same right to attend free secular public schools maintained with tax funds. The fact that a child or his parent for him voluntarily chooses to forego the exercise of the right to educational benefits provided in the public school systems does not deprive him of anything by State action. Nor does a tax-paying parent who chooses to send his children to a religiously-oriented school have a constitutional right to any credit for his taxes which support the public schools simply because he will not or cannot make use of them. Other taxpayers  e. g., bachelors, childless couples, corporations  pay taxes for the support of schools and receive no more benefit from such tax payments than do the parent-plaintiffs who forego sending their children to free public schools.
"No one conscious of religious values can be unsympathetic toward the burden which our constitutional separation puts on parents who desire religious instruction mixed with secular for their children. They pay taxes for others' children's education, at the same time the added cost of instruction for their own. Nor can one happily see benefits denied to children which others receive, because in conscience they or their parents for them desire a different kind of training others do not demand." Everson v. *280 Board of Education, 330 U.S. 1, 58, 67 S.Ct. 504, 532, 91 L.Ed. 711 (Mr. Justice Rutledge, dissenting). That the result of the voluntary choice of parent-plaintiffs is to impose an economic burden upon them is not, however, violative of the Fourteenth Amendment. Cf. Braunfeld v. Brown, 366 U.S. 599, 81 S. Ct. 1144, 6 L.Ed.2d 563.
As in Lemon, "nothing we have said can be construed to disparage the role of church-related elementary and secondary schools in our national life. Their contribution has been and is enormous. Nor do we ignore their economic plight in a period of rising costs and expanding need. * * * The merit and benefits of these schools, however, are not the issue before us."
The Missouri constitutional provisions and implementing statutes are valid as against the objections made by plaintiffs. An order will be entered sustaining the motions to dismiss and dismissing the action.
NOTES
[1] Not mentioned in the amended complaint, but also relevant to the issues, is Section 7 of Article I (the Bill of Rights) of the Missouri Constitution which provides "(t)hat no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion."
[2] Everson v. Board of Education, 330 U.S. 1, which sustained the power of a state to extend the benefits of school bus transportation to all children on a nondiscriminatory basis without regard to their religious beliefs, carefully cautioned that the Court did not mean to intimate by its decision "that a state could not provide transportation only to children attending public schools." Board of Education of Central School District No. 1 v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060, held no more than that a state may, not that it must, adopt a program for the purpose of furthering educational opportunities for the young under which secular textbooks are loaned free of charge to children attending parochial and other private schools. Walz v. Tax Commission, 397 U.S. 664, 90 S. Ct. 1409, 25 L.Ed.2d 697, upheld state tax exemptions for real property owned by religious organizations, not because the Constitution requires the grant of such exemptions, but because history had shown that such exemptions could safely be permitted, no direct money subsidy being involved. And Zorach v. Clauson, 343 U.S. 203, 77 S.Ct. 679, 96 L.Ed. 954, read with People of State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649, teaches that it is one thing to cooperate with religion by permitting the release of public school children for religious instruction without cost to the state on off-school premises, and quite another to assist such a religious program financially, even to the limited extent of allowing the use of school buildings for that purpose.