505 F.Supp. 654 (1980)
Craton LIDDELL et al., Plaintiffs,
v.
The BOARD OF EDUCATION OF the CITY OF ST. LOUIS, MISSOURI et al., Defendants.
No. 72-100C(C).
United States District Court, E. D. Missouri, E. D.
November 14, 1980.
*655 Joseph McDuffie, William P. Russell, St. Louis, Mo., for Craton Liddell et al., plaintiffs.
John H. Lashly, Paul B. Rava, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for Daniel L. Schlafly, et al., defendants.
Charles H. Staples, St. Louis, Mo., Thomas I. Atkins, Gen. Counsel, NAACP, New York City, William E. Caldwell, Richard B. Fields, Ratner & Sugarman, Memphis, Tenn., for Caldwell, plaintiffs-intervenors.
Dempster Holland, Newton G. McCoy, St. Louis, Mo., for Eveyln Hasty.
Larry R. Marshall, Asst. Atty. Gen., Jefferson City, Mo., for State of Missouri and Teasdale etc.
Robert J. Koster, King, Yusman, Koster & Buechner, St. Louis, Mo., for Mary Puleo et al.
Anthony J. Sestric, St. Louis, Mo., for Janice Adams et al.
Craig M. Crenshaw, Jr., Drew S. Days, III, Asst. Atty. Gen., Civ. Rights Div., Dept. of Justice, Washington, D. C., Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for United States.
Charles R. Oldham, St. Louis, Mo., for teacher Local.
Robert H. Dierker, Jr., Asst. City Counselor, St. Louis, Mo., for City of St. Louis.
M. Peter Fischer, Mary Stake Hawker, J. Peter Schmitz, St. Louis, Mo., for Special School District of St. Louis County.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court on the Motion For Disqualification Of Lashly, Caruthers, Thies, Rava and Hamel, P. C. (hereinafter "Lashly firm") filed by plaintiffs-intervenors Adams and Caldwell. For the reasons stated below, the motion will be denied.
The Lashly firm has represented the Board of Education of the City of St. Louis from the time this suit was filed in 1972 to date. Adams and Caldwell have moved for its disqualification alleging that Lashly's representation at various times of certain *656 suburban school districts and its past representation of the State Board of Education create a conflict of interest in violation of the Code of Professional Responsibility. Specifically, Adams and Caldwell allege violations of Canons 4,[1] 5[2] and 9[3] of the Code.

BACKGROUND
Before moving to the merits of the motion, it is imperative that all parties have a clear understanding of the actual involvement of the Lashly firm with the various school districts and the Board of Education named in the motion. It is, of course, this involvement that the Court will look to in determining whether the Lashly firm should be disqualified.
The Lashly firm has represented at one time or another the following suburban school districts: Normandy (prior to 1971-April 1977); Wellston (April 1973-June 20, 1980); Parkway (January 1, 1973-June 20, 1980); Riverview Gardens (January 1, 1976-June 20, 1980); Lindbergh (once in 1977). In addition, the Lashly firm has represented the State Board of Education (February, 1970-April, 1972).
The Lashly firm's representation of the State Board of Education was quite limited. For two years, ending in April 1972, Lashly represented the Board in a church-state matter. See Brusca v. State of Missouri ex rel., State Board of Education, 332 F.Supp. 275 (E.D.Mo.1971). The firm's representation of the State Board ended in April of 1972, before the original complaint in this suit was filed.
The Lashly firm represented the Normandy School District for many years prior to 1971 until April 1977. Adams and Caldwell point to no cases handled by the Lashly firm that would suggest any conflict of interest with respect to the Normandy district.
The Wellston School District was represented by the Lashly firm on various occasions between 1973 and 1980. None of these cases involved issues substantially related to desegregation matters. So too did the Lashly firm represent the districts of Parkway (1973-1980), Riverview Gardens (1976-1980), and Lindbergh (1977). None of the litigated matters involved issues substantially related to those at issue in this suit.

MOTION TO DISQUALIFY
As stated, Adams and Caldwell allege that the representation by the Lashly firm outlined above creates a conflict of interest in the present suit. The Court disagrees. A close look at the allegations of impropriety reveals that the Lashly firm has acted in accordance with the letter and spirit of the Code of Professional Responsibility.
Adams and Caldwell have asked this Court to examine the conduct of the Lashly firm in light of Canon 4, Canon 5, and Canon 9 of the Code. Because the ruling on the Canon 9 allegation is dispositive of certain parts of the other two allegations, the Court will first address itself to this charge.
Canon 9 prohibits conduct by an attorney that connotes even an intimation of impropriety. The importance of this Canon is apparent. Attorneys must adhere to the most rigid standards of ethical conduct to maintain the trust and respect of the public and individual clients. Accordingly, no actual impropriety need be proven. See Fred Webber, Inc. v. Shell Oil Co., 566 F.2d 602, 609 (8th Cir. 1977). On the other hand, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." Id.; Black v. State of Missouri, 492 F.Supp. 848, 872-73 (W.D.Mo.1980); Woods v. Covington *657 County Bank, 537 F.2d 804, 813 (5th Cir. 1976). The court must be mindful too that "ethical questions cannot be resolved by a `scientific' application of principles and precedents, because `no code of ethics could establish unalterable rules governing all possible eventualities ....' Therefore, the unique facts of each case must be tested against not only the canonized principles of the Code, but also the broad backdrop of `[e]thical experience' (citations omitted)." Black v. State of Missouri, supra, at 861. This is why the "court must consider what it believes would be the view of the average laymen." Id. at 872.
It is difficult to see how the Lashly firm's representation of the State Board of Education violates Canon 9. The Lashly firm represented the Board on a church-state matter that was decided in 1971. The firm ended its relationship with the Board in April of 1972, before the birth of this suit. The Court fails to see how a single representation on an unrelated matter before the commencement of Liddell suggests impropriety.
With respect to the suburban school districts, Adams and Caldwell draw the Court's attention to two key dates: October 30, 1973 and May 21, 1980. On October 30, 1973, the St. Louis City Board of Education filed its motion to join various county school districts in this case.[4] On May 21, 1980, following the dictates of the Eighth Circuit Court of Appeals, this Court ordered interaction between the St. Louis City Board of Education and suburban school districts.
The Court notes that at neither of these times did the Lashly firm represent the Lindbergh School District and fails to see any impropriety in the Lashly firm's single representation of the Lindbergh District in 1977.
Regarding the Wellston, Parkway and Normandy districts, which were represented by Lashly in 1973, the Court notes that there was absolutely no indication at this time that any suburban districts would be considered in any possible remedial plan were a constitutionally impermissible system found.[5] The Lashly firm at this time filed a motion to join certain suburban districts on behalf of the St. Louis Board of Education. As the Lashly firm has pointed out, and the evidence supports its assertion, the selection of certain districts was based on objective criteria of geographical distance in accordance with judicial precedents. The Court is convinced that the Lashly firm filed this motion with an eye on the law of school desegregation as it had developed at the time, rather than on its suburban clientele.
The first Order of this Court requiring interaction between the City Board and suburban districts was entered on May 21, 1980. Before this date, anticipating county involvement, the Lashly firm had recommended to both the Parkway and Riverview Gardens districts that independent counsel on desegregation matters was advisable. And one month after this Court's May 21, 1980 Order, the Lashly firm had withdrawn completely from representing Parkway, Riverview Gardens and Wellston. In light of Lashly's representation of the Wellston and Parkway districts for over seven years, and its representation of Riverview Gardens for over four years prior to withdrawal, this Court believes that Lashly's total withdrawal one month after discussions of voluntary exchanges with the county were ordered is admirable. It also must be remembered that liability of the City of St. Louis was only determined three months earlier, on March 3, 1980. Adams v. United States, 620 F.2d 1277 (8th Cir. 1980).
*658 In light of all the circumstances, the Court fails to see any suggestion of impropriety on the part of the Lashly firm. The mere fact that an opposing party has found a way to interpret the facts intimating impropriety does not control.
"Disqualification in spasm reaction to every situation capable of appearing improper to the jaundiced cynic is as goal-defeating as failure to disqualify in blind disregard of flagrant conflicts of interest." State of Arkansas v. Dean Food Products Co., Inc., 605 F.2d 380, 383 (8th Cir. 1979).
Adams and Caldwell have also alleged violations of Canons 4 and 5. Canon 4 requires a lawyer to preserve the confidences and secrets of his client. The Canon 4 allegation is without merit. First, no attorney-client relationship between the Lashly firm and Adams and Caldwell has been shown. "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." In re Yarn Processing Patent Validity Litigation, 530 F.2d 83, 88 (5th Cir. 1976). The exceptions to this general rule are narrow. For example, a motion to disqualify was granted when made by a corporation which a former client controlled. Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). No similar exception is warranted in this case. As the Fifth Circuit Court of Appeals stated,
"To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist." In re Yarn, supra, at 90; Fred Webber, Inc., supra, at 608.
The motion also fails because no showing is made that the matters involved in the pending suit are substantially related to the Lashly firm's previous representations. See American Can Co. v. Citrus Feed Co., 436 F.2d 1125, 1128 (5th Cir. 1971).
Canon 5 requires lawyers to exercise independent professional judgment on behalf of their clients. Disciplinary Rule 5-105(B) states:
"A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C)."[6]
It is clear to the Court that the Lashly firm has acted appropriately under this Rule.
First, no prior representation referred to by Adams and Caldwell involves issues substantially related to those in the present suit. Second, the Lashly firm severed its relationship with all of the school districts as soon as the possibility of future appearances of impropriety existed. The Court is confident that the Lashly firm is capable of exercising independent professional judgment on behalf of the St. Louis City Board of Education.
For the reasons stated above, the motion to disqualify the Lashly firm filed by Adams and Caldwell will be denied.
NOTES
[1] Canon 4 states: "A lawyer should preserve the confidences and secrets of a client."
[2] Canon 5 states: "A lawyer should exercise independent professional judgment on behalf of a client."
[3] Canon 9 states: "A lawyer should avoid even the appearance of professional impropriety."
[4] Motion denied by this Court December 1, 1973.
[5] The Eighth Circuit Court of Appeals' decision in 1976, 546 F.2d 768 allowing plaintiff-intervenors Adams and Caldwell to intervene as parties, suggested that the possibility of county involvement should not be overlooked. This hardly put the Lashly firm on notice that mandatory exchanges of ideas between the suburban districts and the City of St. Louis would be forthcoming.
[6] DR 5-105(C) states: "In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."