**Howard MEADOWS, Petitioner-Appellant,**

**v.**

**Hal R. HOPKINS, Warden, F.C.I., Respondent-Appellee.**

No. 81–5783.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 13, 1983.

Decided Aug. 4, 1983.

Thomas A. Stroud (argued), Memphis, Tenn., Court-appointed for petitioner-appellant.

W. Hickman Ewing, Jr., U.S. Atty., W. James Ellison, Asst. U.S. Atty. (argued), Memphis, Tenn., for respondent-appellee.

Before KEITH and MERRITT, Circuit Judges and BROWN, Senior Circuit Judge.

KEITH, Circuit Judge.

This case concerns the constitutionality of certain regulations promulgated by the United States Bureau of Prisons and implemented by the appellee, Hal R. Hopkins, in his capacity as the warden of the Federal Correctional Institution in Memphis, Ten-

nessee. Appellants brought this action to challenge the rules that authorize institution staff to read incoming and outgoing "general correspondence" of inmates, and that restrict the number of free postage stamps issued to inmates to five per month.

The plaintiffs originally proceeded pro se. They filed a complaint seeking declaratory and injunctive relief. However, after obtaining court appointed counsel an amended complaint was filed in which they sought to have their action certified as a class action on behalf of all other inmates of federal penal institutions. In response to the amended complaint, the Board of Prisons filed a motion for summary judgment alleging that its correspondence regulations were constitutionally permissible. On August 14, 1981, the District Court entered an order which denied class certification, granted the Board of Prisons' motion for summary judgment, and dismissed the complaint. For the reasons set forth below, we affirm.

Our disposition in this matter requires that we address two issues. The first question is whether Bureau of Prisons regulations which authorize the reading of all prisoners' "general correspondence" constitutes an unconstitutional abridgment of first amendment rights. The second question is whether the Bureau regulation which limits a prisoner to five free postage stamps each month for all correspondence except that which is classified as "legal mail," violates an indigent prisoner's constitutional right of free speech, equal protection, due process or eighth amendment guarantee against cruel and unusual punishment.

The second question regarding the number of postage stamps issued to inmates does not require lengthy discussion. The plaintiffs contend that the federal regulation, 28 C.F.R. § 540.20[1], restricting the

1. Because the specific language of 28 C.F.R. § 540.20 is important to our resolution of this issue, the relevant portions of the regulation are set forth below.

§ 540.20 Payment of Postage.

(a) Each inmate shall receive five postage stamps, or the equivalent, each month, sufficient to mail five pieces of first-class domestic mail, weighing one ounce or less. Inmates who have verified correspondents in foreign countries may be provided postage

number of free stamps is unconstitutional because it is not sufficient to meet the ordinary mailing needs of indigent inmates. They argue that when the government deprives a person of the opportunity for gainful employment by incarceration, it must provide a reasonable amount of free postage to inmates without independent financial means. This issue, however, was subsequently rendered moot by a change in federal regulatory policy. The challenged regulation now provides that upon request, the institution shall provide the postage for indigent inmates to enable them to maintain community ties.[2] Because the revised regulations address the concerns of indigent inmates, their claim no longer requires judicial resolution.

The remaining issue concerns Bureau of Prisons regulation 28 C.F.R. § 540.13.[3] That provision authorizes institution staff to open, inspect and read if necessary the incoming and outgoing general correspondence of inmates. According to the regulatory scheme governing correspondence, inmate mail is divided into two categories— "Special Mail" and "General Correspondence". Special Mail includes *inter alia* correspondence sent to or received from Federal and State officials, news media, representatives and Legal Officers (i.e. State Attorneys General, Prosecuting Attorneys,

---

for foreign mail in lieu of the domestic allowance.

(1) Additional postage charges are borne by the inmate. Postage shall be available for purchase in the inmate commissary.

(2) Writing paper and envelopes are provided at no cost to the inmate.

(3) Inmate organizations will purchase their own postage.

(b) An inmate who has neither funds nor sufficient postage and who wishes to mail legal mail (includes courts and attorneys) or Administrative Remedy forms will be provided the postage for such mailing. To prevent abuses of this provision, the warden may impose restrictions on the free legal and Administrative Remedy mailings.

(c) Mailing at government expense is also allowed for necessary correspondence in verified emergency situations for inmates with neither funds nor sufficient postage.

**2.** The regulation which was revised August 31, 1981 now provides as follows:

§ 540.20 Payment of Postage.

(a) Except as provided in paragraphs (d), (e), (f), and (i) of this section, postage charges are the responsibility of the inmate. The Warden shall ensure that the inmate commissary has postage stamps available for purchase by inmates.

(b) Writing paper and envelopes are provided at no cost to the inmate.

(c) Inmate organizations will purchase their own postage.

(d) An inmate who has neither funds nor sufficient postage and who wishes to mail legal mail (includes courts and attorneys) or Administrative Remedy forms will be provided the postage for such mailing. To prevent abuses of this provision, the Warden may impose restrictions on the free legal and administrative remedy mailings.

(e) When requested by an inmate who has neither funds nor sufficient postage, and upon verification of this status by staff, the Warden shall provide the postage for mailing a reasonable number of letters at government expense to enable the inmate to maintain community ties. To prevent abuses of this provision, the Warden may impose restrictions on the free mailings.

(f) Mailing at government expense is also allowed for necessary correspondence in verified emergency situations for inmates with neither funds nor sufficient postage.

**3.** 28 C.F.R. § 540.13 provides, in relevant part:

General correspondence.

(a) The Warden may not limit the number of incoming letters an inmate may receive unless the number received places an unreasonable burden on the institution.

(b) Institution staff shall open and inspect all incoming general correspondence. Incoming general correspondence may be read as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate.

(c) Outgoing mail in Security Level 1, 2, 3 and of pretrial detainees in all institutions may be sealed by the inmate and is sent out unopened and uninspected. Staff may open an inmate's outgoing general correspondence:

(1) If there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity;

(2) If the inmate is on a restricted correspondence list; or

(3) If the correspondence is between inmates. (See § 540.16)

(d) Outgoing mail in Security Level 4, 5, and 6 and administrative institutions, except "special mail", may not be sealed by the inmate and may be inspected and read by staff.

Legislators, Probation Officers, U.S. and State Courts). 28 C.F.R. § 540.2(c). Outgoing special mail may be sealed by the inmate and is not subject to inspection. Incoming special mail on which the sender is adequately identified may not be read and may be opened only in the presence of the inmate for an inspection to determine whether it contains contraband.

General correspondence, however, includes all other incoming and outgoing mail that is not designated as "special." 28 C.F.R. § 540.2(a). This mail is subject to more stringent review. In security level IV, V, and VI institutions,[4] outgoing general correspondence may not be sealed and may be read by the staff. The Federal Corrections Institution in Memphis, is a security level IV institution which requires that mail be reviewed. 28 C.F.R. § 540.-13(d). Pursuant to the regulations, the warden may reject correspondence sent by or to an inmate if it contains any of the following: (1) Matter that is nonmailable under law or postal regulations; (2) Information of escape plots, of plans to commit illegal activities, or to violate institutional rules; (3) Direction of an inmate's business; (4) Threats, extortion, obscenity, or gratuitous profanity; (5) A code; or (6) Contraband. 28 C.F.R. § 540.13(e). The warden is required to notify the inmate in writing if any correspondence is rejected because of its content. The notice must clearly set forth the basis for the rejection of the mail. 28 C.F.R. § 540.12.

The plaintiffs challenge these provisions as being an unconstitutional abridgment of first amendment rights. They argue that the regulations are overbroad and that the security related purposes of the regulations can be accomplished by less intrusive invasions of the plaintiff's right to free speech and privacy. They further maintain that the first amendment does not permit the reading of general correspondence unless prison officials have cause to believe that the correspondence includes offensive material.

We must begin our analysis with the recognition that a prisoner is not stripped of constitutional protections at the prison gate. *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1975).[5] Rather, he "retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law." *Procunier v. Martinez,* 416 U.S. 396, 422, 94 S.Ct. 1800, 1816, 40 L.Ed.2d 224 (1974), *quoting Coffin v. Reichard,* 143 F.2d 443, 445 (6th Cir.1944). The Supreme Court has expressly rejected the contention that first amendment limitations can be justified by mere reference to the legal status of prisoners. *Martinez,* 416 U.S. at 409, 94 S.Ct. at 1809. However, the Court has acknowledged that the special characteristics of the environment in which First Amendment guarantees are applied can shape the parameters of those rights.

Federal courts have traditionally responded to the unique problems of penal environments by invoking a policy of judicial restraint. This policy was designed to accord prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

---

**4.** The classification of prison institutions on a scale of security levels ranges from I, for the least secure, to VI for the most secure. See Bureau of Prisons' Policy Statement 5100.2 (October 7, 1982).

**5.** *See, e.g., Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 129, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977) (freedom to associate); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (due process); *Wolff v. McDonnell,* 418 U.S. 539, 94

S.Ct. 2963, 41 L.Ed.2d 935 (1974) (due process requirements in disciplinary proceedings); *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (freedom of speech and religion under first and fourteenth amendments); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (religious freedom); *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (access to courts); *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (equal protection).

In affording such deference, the Supreme Court reasoned:

[T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism.

416 U.S. at 405, 94 S.Ct. at 1807.

■ The reality of penological systems is that incarceration brings about the withdrawal or limitation of many privileges and rights. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 561, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974); *Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962). The retraction of protected freedoms is justified by the legitimate objectives underlying our penal system. *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1877, *citing Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

■ Yet when an institution infringes upon a specific guarantee such as the first amendment, the regulation must be evaluated in light of the central objectives of prison administrators. Certainly, prison ad-ministrators do not function without judicial constraints. But our comprehensive system of justice requires some neutral accommodation between institutional objectives and the provisions of the Constitution that are of general application. 441 U.S. at 546, 99 S.Ct. at 1877. *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 129–30, 97 S.Ct. 2532, 2539–40, 53 L.Ed.2d 629 (1977); *Wolff v. McDonnell,* 418 U.S. at 556, 94 S.Ct. at 2974 (1974).[6]

■ In *Procunier v. Martinez,* the Supreme Court attempted to strike a balance between the governmental interests at stake in regulating prisons and the preservation of first amendment liberties. In so doing, the Court held that censorship of inmate correspondence was justified if certain criteria are met.[7] First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Second, the limitation of first amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. *Id.,* 416 U.S. at 413, 94 S.Ct. at 1811.

The case *sub judice* clearly comports with the first criterion. The governmental interest which is furthered by mail regulation is obviously prison security and order.[8] Therefore, the plaintiff's case must stand or fall on their arguments relating to the

6. *See also Storseth v. Spellman,* 654 F.2d 1349, 1355 (9th Cir.1981) (challenges to restrictions of first amendment rights must be analyzed in terms of legitimate policies and goals of the corrections agency); *Ramos v. Lamm,* 639 F.2d 559, 581–82 (10th Cir.), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) (correspondence restrictions must further an important or substantial state interest); *Guajardo v. Estelle,* 580 F.2d 748, 753 (5th Cir. 1978) (mail censorship must further one or more substantial governmental interests in security, order and rehabilitation).

7. The Court's decision in *Martinez* was based upon its perception of the constitutional rights of individuals who correspond with prisoners. In devising the proper standard for review, the Court specifically rejected cases involving "prisoners' rights". Instead, the Court focused on previous decisions which addressed incidental restrictions on First Amendment liberties imposed in furtherance of legitimate governmental goals. Hence, *Martinez* does not define the scope of those First Amendment rights held by inmates which survive incarceration. Nonetheless, the guiding principles articulated in *Martinez* must serve as the touchstone for the resolution of the present challenge. For a discussion of the scope of *Martinez,* see *Procunier v. Navarette,* 434 U.S. 555, 563, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978); and *Guajardo v. Estelle,* 580 F.2d 748, 753 (5th Cir.1978).

8. Maintaining institutional security, preserving internal order and rehabilitating inmates have been sanctioned as legitimate governmental interests. *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1877.

second criterion. In this regard, they argue that the regulations are too broad, and that the security related objectives of the regulations may be accomplished by less intrusive invasions of their constitutional rights. They also maintain that permitting institution staff to read and censor general correspondence will chill the protected expression of inmates and their correspondents.

The Supreme Court in *Martinez* considered similar arguments. There the Court held that the regulations in question were invalid because they imposed broad restrictions which were not necessary to the furtherance of governmental interests. The invalidated regulations authorized prison staff to censor statements from inmate correspondence that "unduly complain" or "magnify grievances," that express "inflammatory political, racial, religious or other views," and matter deemed "defamatory" or "otherwise inappropriate." 416 U.S. at 415, 94 S.Ct. at 1812. As the Supreme Court concluded, "these regulations fairly invited prison officials to apply their own personal prejudices and opinions as standards for prisoner mail censorship." *Id.*

Unlike the regulation that was challenged in *Martinez,* the present regulation delineates with specificity material which is deemed censorable. As previously noted, the institution may only reject correspondence that contains matter prohibited by law, information regarding escape plots or illegal activities, and matter that contains threats, obscenity, a code or contraband. Thus prison officials are not free to impose their own standards. Moreover, the regulations are clearly designed to promote the judicially sanctioned interests of security, order and rehabilitation. In fact, the Supreme Court in *Martinez* expressed approval of regulations that are very similar to those presently challenged. *See Id.* at 416 n. 15, 94 S.Ct. at 1813 n. 15 (where the Court reproduced comparable regulations and stated that they are indicative of one solution to the problem of overly-broad censorship).

We are satisfied that 28 C.F.R. § 540.13 strikes a proper balance between the consti-

tutional rights of the appellants and the legitimate concerns of prison officials. Accordingly, we affirm the judgment of the Honorable Robert M. McRae, Jr., Chief Judge of the United States District Court for the Western District of Tennessee.