Kareem ABDOOL–RASHAAD, Plaintiff,

v.

Richard P. SEITER, Defendant.

No. C–1–85–156.

United States District Court,
S.D. Ohio, W.D.

April 8, 1987.

Abdool–Rashaad, Lucasville, Ohio, pro se.

Angela R. Stokes, Asst. Atty. Gen., Columbus, Ohio, for defendant.

ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Report and Recommendation and the Amended Report and Recommendation of the United States Magistrate (doc. nos. 17 & 19) and all responses thereto (doc. nos. 22 & 23). The Magistrate has recommended that defendant's Motion to Dismiss be denied.

Kareem Abdool–Rashaad, # 121–777, also formerly known as Mark Miller, (plaintiff), filed this action on January 23, 1985 against Richard P. Seiter, Director of the Department of Rehabilitation and Correction, and the United States Government.

Plaintiff has created a new religion called "Universalism," the tenets of which are:

a) "We go by what the Bible says."

b) "We don't observe Easter or Christmas."

c) "Our women don't wear pants nor our men dresses or skirts."

d) "We believe in spiritual healing and speaking in tongues, holding worship service on the Sabbath Friday 6:00 P.M.; confessional baptism, and the Nazerite Vow."

e) "We don't believe in abortion, in drinking until one is drunk ..., or eating pork."

f) "We believe in Free Flow Corn Row Braiding of the hair, to keep them properly managed, each race must be permitted to do whatever needs to be done."

g) "We believe in observing the Hebrew Pass-over and all other yearly observances, in wearing taliths on the Sabbath and adopting Godly names."

Plaintiff's relief requests, "Order the prison to recognize my religion and all of its aspects."

In a separate Motion for Injunction, plaintiff requests that defendant be enjoined from cutting his hair or otherwise enforcing the regulations which require plaintiff's hair to be cut.

Plaintiff requests that this case be referred to a United States Magistrate (doc. no. 6). This has been accomplished (doc. no. 4). He also moves for summary judgment and for an evidentiary hearing, both of which are denied for the reasons which follow.

On July 22, 1982, at the Ohio State Reformatory Admission Center, plaintiff stated that his religious preference was Christian. On August 23, 1984, plaintiff filed a Complaint with this Court, bearing Case No. C–1–84–1201, that alleged that he is an Orthodox Hebrew and Black Belt in Shyripkin Kung Fu and that the combination of these two religions is Orthojumarism. On August 23, 1984, this Court entered its Order in that case which characterized plaintiff's purported religion as facially idiosyncratic and not entitled to First Amendment protection and dismissed the case. On December 21, 1984, plaintiff filed a Complaint with this Court, bearing Case No. C–1–84–1936, that appears to allege that the plaintiff is a Buddhist, Shintoist, Moslem, or Confucianist. On January 23, 1985, the plaintiff filed a Complaint initiating this case in which he alleges that his religious preference is Universalism. On January 15, 1986, the plaintiff's deposition was taken in the case of *Tidwell v. Dallman,* C–1–85–1342 (S.D. Ohio 1985), at which plaintiff stated that he is a born-again Christian. (Tr. pg. 29, line 21).

Article III of the United States Constitution imposes a threshold requirement upon plaintiffs who seek to invoke the power of the federal courts to allege an actual case or controversy. *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), therefore, "plaintiffs in the federal courts must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1973). The threat of injury must be both "real and immediate, not conjectural or hypothetical." *Id.* at 494, 94 S.Ct. at 675.

Plaintiff's Complaint is a statement of the alleged tenets of his newly formed religion called Universalism and requests this Court "to order the prison to recognize his newly formed religion and all of its aspects." Plaintiff does allege in later documents that the defendant has violated his constitutional rights and has caused an actual injury by punishing him for exercising his religious belief concerning hair. No other threatened or actual injury is alleged.

In considering the Motion to Dismiss, the Court must consider two issues:

1. Whether it may order the prison to recognize this new religion, Universalism; and

2. Whether it may enjoin defendant from enforcing the hair regulations against this plaintiff in view of his alleged religious beliefs.

■ In determining a motion to dismiss for failure to state a claim, the allegations in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976). The motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although pro se complaints are held to less stringent standards as compared with formal pleadings drafted by attorneys, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), the Court is not required to "conjure up" allegations which are not plead. *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).

■ The First Amendment to the Constitution of the United States provides in part:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;"

It is a simple step in reasoning, that this Court shall make no order respecting an establishment of religion.

To grant the plaintiff's request to order the prison to recognize his religion and all its aspects would establish a religion. Such an order would be a violation of the Establishment Clause of the First Amendment of the United States Constitution, therefore, defendant's Motion to Dismiss plaintiff's request to order the prison to recognize his religion and all its aspects should be granted.

While concerns about the establishment of state religions in the United States are not primary, the concept of governmental neutrality toward religion and its aspects must be of constant concern as the wall separating church and state remains blurred and one "can only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law." *Mueller v. Allen*, 463 U.S. 388, 393, 103 S.Ct. 3062, 3066, 77 L.Ed.2d 721 (1983); *Witters v. Washington Dept. of Services for Blind*, 474 U.S. 481, 106 S.Ct. 748, 751, 88 L.Ed.2d 846 (1986).

The Free Exercise Clause is concerned about religious persecution. The most typical free exercise challenge arises, as in this case, in the context of a neutral governmental regulation that prohibits or requires conduct which conflicts with the tenets of a particular religion. To resolve such cases, the Court must balance the government's interest in the regulation against the burden it imposes on religious liberty. In such cases, the Government must justify the regulation by showing "that it is essential to accomplish an overriding government interest." *United States v. Lee*, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982).

This balancing test was applied in *Reynolds v. United States*, 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1878) (polygamy laws); *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (compulsory vaccination); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (child labor laws); *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) (Sunday closing laws); *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (federal social security law); *Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) (IRS regulation); *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (Fair Labor Standards Act); *Bowen v. Roy*, 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) (federal food stamps and AFDC programs). In each of these cases, the Court upheld the challenged regulation, either because it did not present a sufficiently significant burden on

religion or because the burden was justified by a sufficiently compelling governmental interest. In fact, very seldom has the Supreme Court held that conduct based upon religious belief was entitled to an exemption from a neutral governmental regulation. *See Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (Amish parents entitled to a limited exemption from state compulsory education law); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Thomas v. Review Board*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) (state could not deny unemployment benefits where claimant's refusal of work was based on religious beliefs).

■ This case graphically demonstrates how the free exercise challenges to neutral governmental regulations put the Court close to the border of forbidden territory under the religion clauses. The First Amendment not only prohibits governmental hostility toward religion, it affirmatively requires governmental neutrality toward religion. Great caution must be exercised in granting religiously-based exemptions from neutral governmental regulations because such exemptions could become the first steps toward advancing a religion or could entangle the government in repeated religious inquiries, results proscribed by the Establishment Clause. *United States v. Lee*, 455 U.S. at 262, note 2, 102 S.Ct. at 1058, note 2 (J. Stevens, concurring); *Bob Jones University v. United States*, 461 U.S. at 604, note 30, 103 S.Ct. at 2035, note 30.

In the context of the prison setting, this Circuit has resolved the tension between the Establishment Clause and the Free Exercise Clause in *Weaver v. Jago*, 675 F.2d 116, 118 (6th Cir.1982) by holding that refusing to permit an inmate to grow his hair as required by his religious beliefs may state a First Amendment deprivation, however,

> "[I]f the belief asserted is 'philosophical and personal rather than religious,' or is 'merely a matter of personal preference,' and not 'one of deep religious conviction *shared by an organized group*,' it will

not be entitled to First Amendment protection." *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144 (4th Cir.1980), citing *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). (emphasis added).

Other courts have analyzed this issue in two steps: 1) are the beliefs "sincerely held", and 2) are the beliefs "religious in nature, in the claimant's scheme of things?" *Africa v. Commonwealth of Pennsylvania*, 520 F.Supp. 967 (E.D.Pa. 1981), aff'd 662 F.2d 1025 (3rd Cir.1981); *Theriault v. Silber*, 453 F.Supp. 254 (W.D. Texas 1978).

■ Administrative Regulation 5120–9–25 (F) allows the grooming regulation to be modified upon a showing by the inmate that he holds a sincerely held belief that conflicts with the grooming regulations. In addition, however, the Ohio Department of Rehabilitation and Correction requires an inmate who is seeking a religious exemption to the hair grooming requirements to present outside verification of the religious basis for his request for the exemption. This Court considered this objective requirement in light of *Weaver* and held it to be a proper exercise of the power of government.

Plaintiff has cited cases as authority to support his argument that the aspects of his new religion should be recognized. In each and every case, however, the plaintiff had demonstrated outside verification of the religious basis for the request for exemption or for the religious beliefs. The distinguishing element is that this condition precedent was met in each case and, therefore, plaintiff's reliance is misplaced. *See Geller v. Secretary of Defense*, 423 F.Supp. 16 (D.C.1976) (Jewish faith); *Monroe v. Bombard*, 422 F.Supp. 211 (S.D.N.Y.1976) (Muslim); *Sewell v. Pegelow*, 291 F.2d 196 (4th Cir.1961) (Muslim); *Burgin v. Henderson*, 536 F.2d 501 (2nd Cir.1976) (Muslim); and *Sostre v. McGinnis*, 334 F.2d 906 (2nd Cir.1964) (Muslim).

■ It is uncontroverted that plaintiff is unable to obtain outside verification of the religious basis for his request for exemption or of his beliefs, therefore, he is not

entitled to the exemption from the grooming requirements under either the government regulations or *Weaver*. As plaintiff's desire for exemption is not shared by an organized group, his Motion for Injunction does not state facts which entitle him to First Amendment protection, therefore, the Motion to Dismiss the case filed by defendant should be granted.

In balancing the religious beliefs and practices of prisoners and their keepers, the Sixth Circuit stated in *Brown v. Johnson,* 743 F.2d 408 (6th Cir.1984):

In considering these claims our starting point must be *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 497 (1979). In *Bell* the Court articulated four principles to consider when a challenged prison rule or regulation is attacked on constitutional grounds. First, it is clear that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Id.* at 545, 99 S.Ct. at 1877. *See also Wolfel v. Bates,* 707 F.2d 932, 934 (6th Cir.1983) (per curiam) (prison administrators do not have "an overriding interest in the *indiscriminate* suppression of peacefully communicated inmate complaints") (emphasis in original). A prisoner retains those rights that are "not inconsistent with his status as a prisoner or with the legitimate penalogical objectives of the corrections system." *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Second, merely because prisoners "retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations.... There must be a 'mutual accommodation' between institutional needs and objections and the provisions of the Constitution that are of general application." *Bell,* 441 U.S. at 546, 99 S.Ct. at 1878 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)). *See also Meadows v. Hopkins,* 713 F.2d 206, 209–210 (6th Cir.1983) (prison regulations infringing on inmates constitutional rights must be evaluated in light of the central objectives of prison administrators). Third, "maintaining in-

stitutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of convicted prisoners. *Bell,* 441 U.S. at 546, 99 S.Ct. at 1878. And finally, because the daily operation of a correctional facility poses difficult and unique management problems, prison officials should be accorded substantial deference in the adoption and implementation of policies and practices that in "their judgment are needed to preserve internal order and discipline and to maintain institutional security. 'Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Bell* at 547–48, 99 S.Ct. at 1878 (quoting *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)). *Id.* at 410.

\* \* \* \* \* \*

Although a prisoner "does not have an absolute right to practice his religion in accord with his desires," he is entitled to have a court balance his constitutional claims against legitimate state interests in operating its prisons. *Jihaad* [*v. O'Brien*], 645 F.2d [556] at 564; *Weaver v. Jago,* 675 F.2d at 118. *Accord Meadows v. Hopkins,* 713 F.2d at 210; *Thompson v. Commonwealth of Kentucky,* 712 F.2d 1078, 1080 (6th Cir.1983). *Id.* at 411.

\* \* \* \* \* \*

Where an inmate's religious freedom is at stake, correctional officials may only adopt regulations which are "reasonably and substantially" justified by official concern for internal security and inmate discipline. *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 863 (4th Cir.1975); *see also O'Malley v. Brierley,* 477 F.2d 785, 795–96 (3rd Cir. 1973). "Prison restrictions that impinge

upon a prisoner's First Amendment right must be carefully scrutinized to ascertain the extent to which they are necessary to effectuate the legitimate policies and goals of the corrections system." *Childs v. Duckworth,* 705 F.2d 915, 920 (7th Cir.1983). *Id.* at 411–12. (footnote omitted)

Under the facts of the request for injunctive relief, this plaintiff cannot establish an impingement of a First Amendment right. Additionally, this Court is prohibited by the same First Amendment from granting the relief requested in plaintiff's Complaint.

The Report of the Magistrate is ACCEPTED, however, his recommendation is REJECTED; the objections to the recommendation are SUSTAINED; and defendant's Motion to Dismiss this case is GRANTED.

IT IS SO ORDERED.