William L. Frost Manhattan City Attorney 1101 Poyntz Manhattan, Kansas 66502
Dear Mr. Frost:
As City Attorney for the City of Manhattan, you request our opinion concerning the interpretation of section 7 of the Bill of Rights to the Kansas Constitution (religious liberty) as it relates to the use of public funds for social service agencies that subscribe to certain religious tenets. You mention Habitat for Humanity (Habitat) which utilizes volunteers from a variety of religious organizations to build affordable housing for economically disadvantaged individuals. You indicate that the articles of incorporation for Habitat state that its purpose is to "implement the gospel of Jesus Christ . . . by working with economically disadvantaged people to help them build a better human habitat in which to live and work." Our understanding is that Habitat provides its services to individuals without regard to religious affiliation.
Another social service agency that is requesting financial assistance from the city is the Salvation Army which proposes to use the funds to assist with its mission to help the poor. You indicate that the Salvation Army's articles of incorporation indicate that it is interested in the "spiritual, moral and physical reformation of the working classes; for the reclamation of the vicious, criminal, dissolute, and degraded; for visitation among the poor and lowly sick; for the preaching of the gospel and the dissemination of Christian truth by means of open air and indoor meetings." The Salvation Army also provides its services to individuals regardless of religious affiliation.
The First Amendment to the United States Constitution applies to the states through the Fourteenth Amendment. Under the First Amendment, Congress is precluded from making any "law respecting an establishment of religion or prohibiting the free exercise thereof. . . ." The United States Supreme Court has interpreted the Establishment Clause to permit government funding of secular functions performed by sectarian organizations. [See Bowen v. Kendrick, 487 U.S. 589, 101 L.Ed.2d 520,108 S.Ct. 2562 (1988) (federal statute providing grants for services in the area of adolescent sex education to private organizations, including organizations with institutional ties to religious denominations, not facially invalid under the First Amendment Establishment Clause); Roemer v. Board of Public Works of Maryland,426 U.S. 736, 49 L.Ed.2d 179, 96 S.Ct. 2337 (1976) (public grants to religious colleges cannot be used for "sectarian purposes"); Bradfield v. Roberts, 175 U.S. 291,44 L.Ed. 168, 20 S.Ct. 121,(1899) (providing public funds to religious organizations for health care for indigent patients does not violate the Establishment Clause).]
 "We note that . . . this court has never held that religious institutions are disabled by the First Amendment from participating in publicly sponsored welfare programs. To the contrary, in Bradfield v. Roberts, (citation omitted), the Court upheld an agreement between the Commissioners of the District of Columbia and a religiously affiliated hospital whereby the Federal Government would pay for the construction of a new building on the grounds of the hospital. In effect, the Court refused to hold that the mere fact that the hospital was `conducted under the auspices of the Roman Catholic Church' was sufficient to alter the purely secular legal character of the corporation, particularly in the absence of any allegation that the hospital discriminated on the basis of religion or operated in any way inconsistent with its secular charter. In the Court's view, the giving of federal aid to the hospital was entirely consistent with the Establishment Clause, and the fact that the hospital was religiously affiliated was `wholly immaterial'." 101 L.Ed.2d at 540, 541.
However, the fact that the First Amendment may not prohibit a city from providing funds to a private organization that subscribes to certain religious tenets does not answer the question of whether section 7 of the Kansas Bill of Rights prohibits such activity because a state constitutional provision may be more restrictive than the First Amendment. Attorney General Opinion No.94-37; Witters v. Washington Department of Services forthe Blind, 474 U.S. 481, 88 L.Ed.2d 846, 106 S.Ct. 748
(1986), on remand, 771 P.2d 1119 (Washington 1989). InWitters, the United States Supreme Court concluded that the extension of state financial aid to finance a student's training at a Christian college to become a pastor did not violate the Establishment Clause but, on remand, the Washington Supreme Court concluded that such assistance violated the state constitution which provided that no public funds could be used to support any religious worship or instruction.
Section 7 of the Kansas Bill of Rights contains much more detail than the First Amendment. It states, in part, as follows:
 "The right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to . . . . support any form of worship . . . nor any preference be given by law to any religious establishment or mode of worship." (Emphasis added).
There are no Kansas appellate court decisions that address the issue of providing public funds to an organization that subscribes to certain religious tenets for the provision of secular services. In Billard v.Board of Education, 69 Kan. 53 (1904), the Kansas Supreme Court concluded that a public school teacher who quieted her students by repeating the Lord's Prayer and the Twenty-Third Psalm was not conducting religious worship or teaching religious doctrine in violation of section 7.
 "Section 7 of the Bill of Rights contains the following provision: `Nor shall any person be compelled to attend or support any form of worship.' That is, no person shall be compelled to pay . . . taxes to secure or maintain a place where any form of religious worship shall be conducted, or where any sectarian or religious doctrine is taught; nor shall any form of religious worship be conducted, or any sectarian or religious doctrine be taught, in any place supported by the imposition of taxes." 69 Kan. at 56.
Financial assistance to a social service agency that subscribes to certain religious tenets does not necessarily mean that a city is supporting religious worship. Unlike parochial schools which are "pervasively sectarian," [Bowen v. Kennard, supra] the United States Supreme Court has concluded that religiously affiliated recipients of federal grant funds are capable of carrying out the secular function of the grant in a lawful and secular manner.
 "[N]othing in our prior cases warrants the presumption . . . that religiously affiliated (federal) grantees are not capable of carrying out their functions under the federal statute in a lawful, secular manner. Only in the context of aid `to pervasively sectarian' institutions have we invalidated an aid program on the grounds that there was a substantial risk that aid to these religious institutions would, knowingly or unknowingly, result in religious indoctrination. (Citations omitted). In contrast, when the aid is to flow to religiously affiliated institutions that were not pervasively sectarian, . . . we refuse to presume that it would be used in a way that would have the primary effect of advancing religion." 101 L.Ed.2d at 542.
In light of the dearth of Kansas appellate decisions construing section 7 in regard to the provision of public funds to an organization that subscribes to certain religious tenets for the provision of secular services, it is our opinion that section 7 is not an impediment to such a grant provided the financial assistance conforms to the public purpose doctrine and the funds are not used to secure or maintain a place where any form of religious worship is conducted or where any religious doctrine is taught.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm