UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-2328

GUADALUPE ROJAS,

Plaintiff - Appellant,

v.

LAWRENCE FITCH, ET AL.,

Defendants - Appellees.



No. 97-1089

GUADALUPE ROJAS,

Plaintiff - Appellee,

v.

DR. LEE H. ARNOLD, ET AL.,

Defendants - Appellants.



APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Francis J. Boyle, Senior U.S. District Judge] 



Before

Torruella, Chief Judge, 

Campbell, Senior Circuit Judge, 

and Boudin, Circuit Judge. 



John W. Dineen, with whom Yesser, Glasson & Dineen was on 
brief for appellant Guadalupe Rojas.
Scott Glabman, Attorney, with whom J. Davitt McAteer, Acting 
Solicitor of Labor, Charles D. Raymond, Associate Solicitor for 
Employment and Training, Legal Services, and Harry L. Sheinfeld, 
Counsel for Litigation, U.S. Department of Labor, Office of the
Solicitor, were on brief for appellee Cynthia A. Metzler, Acting
Secretary of Labor.
Rebecca Tedford Partington, Assistant Attorney General, for  
appellee Dr. Lee Arnold, Director, Rhode Island Department of
Labor and Training.
Michael G. Dolan, with whom Cadwalader, Wickersham & Taft, 
and Gerard P. Cobleigh were on brief for appellee Salvation Army. 



October 9, 1997


-2-

TORRUELLA, Chief Judge. Plaintiff-Appellant Guadalupe TORRUELLA, Chief Judge.  

Rojas, a former employee of the Salvation Army, sought a

declaratory judgment that exemptions for religious employers

under the Rhode Island unemployment tax statute and under the

Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. 3301-3311,

violate the Establishment Clause and the Equal Protection Clause

of the federal Constitution, as well as Article I, 3 of the

Rhode Island Constitution, which protects the Freedom of

Religion. She named as defendants the director of the Rhode

Island Department of Employment and Training ("DET") and the

Secretary of the federal Department of Labor. The Salvation Army

intervened as a defendant. The district court rejected all of

Rojas's substantive arguments for declaratory relief, see Rojas 

v. Fitch, 928 F. Supp. 155, 162-67 (D.R.I. 1996), and now, on 

appeal, she reasserts her federal Establishment Clause and Equal

Protection claims. We affirm.

BACKGROUND BACKGROUND

The following facts are not disputed. Rojas was a paid

employee of the Salvation Army, serving as a social case worker

from 1988 to 1994, except for a short interruption in 1990 and

1991 when she worked for Catholic Social Services. Rojas was

not, and was not required to be, a soldier or member of the

Salvation Army when employed as a case worker. The Salvation

Army terminated her employment on March 18, 1994, citing

financial constraints. 

-3-

Approximately one month after her termination, Rojas

applied for unemployment insurance benefits from the DET. The

DET found that Rojas was ineligible because her former employer,

the Salvation Army, was exempt from contributing to Rhode

Island's unemployment insurance scheme under sections 28-42-8(4)

and 28-44-11 of the Rhode Island General Laws.1 Pursuant to the

exemption for religious employers under section 28-42-8(4), no

taxes were withheld from Rojas's wages by the Salvation Army, and

her income was not reported to the DET. The DET's denial of

benefits was upheld by a DET referee after a hearing, and later

the referee's determination was upheld by the DET Board of

Review.

On September 9, 1994, Rojas initiated an action in

federal district court against the Director of the DET, seeking

declaratory invalidation of the exemption under either the

Establishment Clause,2 the Equal Protection Clause,3 or Article

I, 3 of the Rhode Island Constitution.4 In an amended
 

1 In 1987, the DET determined that the Salvation Army is a
"church" and thus entitled to an exemption pursuant to R.I. Gen.
Laws 28-42-8(4).

2 U.S. Const. amend. I ("Congress shall make no law respecting
an establishment of religion, or prohibiting the free exercise
thereof . . . .").

3 U.S. Const. amends. V, XIV.

4 Article I, 3 provides, in pertinent part:

. . . no person shall be compelled to
frequent or to support any religious worship,
place, or ministry whatever, except in
fulfillment of such person's voluntary
contract; nor enforced, restrained, molested,

-4-

complaint, Rojas added the Secretary of the Department of Labor

as a defendant, on the theory that FUTA's allowance of state

exemptions for religious employers in the federal-state

unemployment insurance system was an underlying cause of the

Rhode Island exemption she challenged. See 26 U.S.C. 3309(b) 

(FUTA provision listing permissible employer exemptions,

including exemption for religious employers). The Salvation Army

was allowed to intervene, without objection, as a defendant.

FUTA establishes a federal-state unemployment benefit

scheme requiring employers to pay a federal excise tax, see 26 

U.S.C. 3301 (computing the tax as a percentage of wages of

covered employees), but encouraging the development of state

unemployment insurance programs in the following ways: first,

employers paying into a qualifying state unemployment fund are

entitled to a credit on the federal tax, see 26 U.S.C. 3302, 

and second, a qualifying state is entitled to receive federal

grants toward the cost of administering the state's unemployment

 

or burdened in body or goods; nor
disqualified from holding any office; nor
otherwise suffer on account of such person's
religious belief; and that every person shall
be free to worship God according to the
dictates of such person's conscience, and to
profess and by argument to maintain such
person's opinion in matters of religion; and
that the same shall in no wise diminish,
enlarge, or affect the civil capacity of any
person.

R.I. Const. art. I, 3. Rojas also appealed the decision of the
DET board in state court, a suit which has been stayed pending
resolution of her federal civil action. 

-5-

compensation program, see 42 U.S.C. 503. Rhode Island's 

unemployment fund qualified for participation in the FUTA system.

FUTA exempts certain classes of employees from

mandatory state coverage by a qualifying state plan. See 26 

U.S.C. 3309(b). The current scope of exemptions reflects

amendments made to FUTA by Congress in 1976. The 1976 Amendments

narrowed the set of employees who were exempt from mandatory

state coverage, by requiring, for example, that previously

exempted school employees be covered. In 1970 as well, the scope

of FUTA exemptions was narrowed significantly by Congress when it

repealed a broad exemption previously available to all nonprofit

organizations. See generally California v. Grace Brethren 

Church, 457 U.S. 393, 397 (1982) (describing the 1970 and 1976 

FUTA Amendments). 

Currently, the segments of the labor force that the

states are not required to cover under FUTA section 3309(b)

include persons "in the employ of (A) a church or convention or

association of churches, or (B) an organization which is operated

primarily for religious purposes and which is operated,

supervised, controlled, or principally supported by a church or

convention or association of churches." 26 U.S.C. 3309(b)(1).

Also exempt are employees of small nonprofit organizations

(having fewer than four regular employees), see 3309(c), 

elected state employees, see 3309(b)(3), employees at certain 

rehabilitation facilities, see 3309(4)(A), and inmates of 

custodial or penal institutions, see 3309(b)(6). 

-6-

The Rhode Island Employment Security Act ("RIESA"),

R.I.G.L. 28-42-1 et seq., exempts a variety of kinds of 

employment from coverage. See R.I. Gen. Laws 28-42-8 (1995). 

Apparently tracking the language of FUTA, Section 28-42-8(4)(i)

exempts service performed "in the employ of: (A) A church or

convention or association of churches, or (B) an organization

which is operated, supervised, controlled, or principally

supported by a church or convention or association of churches."

Other exempted employees under RIESA include certain insurance

brokers, golf caddies, certain rehabilitation center employees,

and certain real estate brokers. R.I. Gen. Laws 28-42-8(11),

(9), (4)(B)(iii), (10).

The defendants raised a number of procedural claims

below, all of which were rejected by the district court. Upon

reaching the merits of Rojas's suit, the district court rejected

all of her claims. On appeal, Rojas argues that the Rhode Island

and FUTA exemptions for religions violate the Establishment

Clause and the Equal Protection Clause of the federal

Constitution, while the appellees reassert their claims that

jurisdiction is lacking because of the Tax Injunction Act, 28

U.S.C. 1341 and that the appellant lacks standing.

DISCUSSION DISCUSSION

Because we find that the appellant's claims fail on the

merits, we need not reach either the claim put forward by the

federal defendant-appellee that Rojas lacks standing to challenge

FUTA or the claim put forward by the state defendant-appellee

-7-

that the Tax Injunction Act bars federal jurisdiction over the

suit. See Norton v. Matthews, 427 U.S. 524, 530-31 (1976); 

Hachikian v. FDIC, 96 F.3d 502, 506 n.4 (1st Cir. 1996) ("'It is 

a familiar tenet that when an appeal presents a jurisdictional

quandary, yet the merits of the underlying issue, if reached,

will in any event be resolved in favor of the party challenging

the court's jurisdiction, then the court may forsake the

jurisdictional riddle and simply dispose of the appeal on the

merits.'")(quoting United States v. Stoller, 78 F.3d 710, 715 

(1st Cir. 1996)).

I. The Establishment Clause Claim I. The Establishment Clause Claim

At the core of the Establishment Clause is the idea

that government cannot "favor religion over nonreligion, nor

sponsor a particular sect, nor try to encourage participation in

or abnegation of religion." Walz v. Tax Comm'n, 397 U.S. 664, 

694 (1970) (Harlan, J., concurring) (noting that while

disagreements over applications of Establishment Clause are

common, its core ideal is well established). In order to

vindicate this constitutional guarantee, two tests have long

guided judicial review of any challenged legislation: first, the

law must have a purpose other than to advance or inhibit

religion; second, the primary effect of the law must not be to

advance or inhibit religion. See, e.g., Abington School District 

v. Shempp, 347 U.S. 203, 222 (1963) ("The test may be stated as 

follows: what are the purpose and primary effect of the

enactment? If either is the advancement or inhibition of religion

-8-

then the enactment exceeds the scope of legislative power as

circumscribed by the Constitution."). A third practical concern

under the Establishment Clause is that the net effect of

governmental programs avoid "excessive governmental entanglement

with religion." Walz, 397 U.S. at 674. 

These threads were united in the well-known three-part

test in Lemon v. Kurtzman, 403 U.S. 602 (1971), which provides: 

"First, the statute must have a secular legislative purpose;

second, its principal or primary effect must be one that neither

advances or inhibits religion; finally, the statute must not

foster 'an excessive government entanglement with religion.'" Id. 

at 612-13 (quoting Walz)(citation omitted). The district court 

applied the Lemon test in the course of holding that FUTA and the 

RIESA did not violate the Establishment Clause. See 928 F. Supp. 

at 163-66. This approach was appropriate, for the Supreme Court,

despite criticisms of previous applications of the Lemon test, 

essentially confirmed in Agostini v. Felton, 117 S. Ct. 1997 

(1997), that the Lemon criteria still apply. See 117 S. Ct. at 

2010, 2015.

In Agostini, the Court overruled its Establishment 

Clause decision in Aguilar v. Felton, 473 U.S. 402 (1985) -- 

which had barred the New York City Board of Education from

sending public school teachers into sectarian private schools to

teach remedial classes pursuant to Title I -- but nevertheless

stated that the general tests used in analyzing challenged

legislation under the Establishment Clause had not changed. The 

-9-

Agostini decision reaffirmed the need to ascertain that laws have 

a secular purpose and a primary effect other than advancing

religion, see 117 S. Ct. at 2010, and explicitly incorporated the 

entanglement prong into the effects calculus, thereby making the

third prong of Lemon a part of the second prong, see id. at 2016. 

The Court in Agostini noted that what has changed since Aguilar 

are certain presumptions regarding the effects of neutral laws

that incidentally confer benefits to religions. See 117 S. Ct. 

at 2010-13 (stating that the Court no longer considers the

presence of public school employees on parochial school property

to lead ineluctably to the impermissible effect of advancing or

endorsing religion where their presence is part of neutral

program).

The district court properly found that the FUTA and

RIESA exemptions had neither an impermissible purpose, nor an

impermissible effect on religion. First, both the FUTA and the

RIESA exemption provisions serve the secular purpose of

facilitating the administration of the federal-state unemployment

insurance program by excluding from coverage a variety of workers

whose employment patterns are irregular or whose wages are not

easily accountable. With regard to FUTA, Rojas concedes that the

original purpose of the coverage exemptions was to address

administrability concerns. She contends, however, that the

current 26 U.S.C. 3309, viewed in the wake of the 1970 and 1976

Amendments, reflects the purpose of favoring religion rather than

the secular purpose of providing ease of administration. Rojas

-10-

is unable to direct our attention to, nor can we find, any

indications in the legislative history of the 1970 and 1976

Amendments that suggest an impermissible purpose of advancing

religion in general or any particular religion. See, e.g., 

Wallace v. Jaffree, 472 U.S. 38, 56 (1985) ("[T]he First 

Amendment requires that a statute must be invalidated if it is

entirely motivated by a purpose to advance religion.").

Moreover, the current exemption for religious employment, even

after the amendments, still rests within the context of a variety

of other exemptions, all of which appear to share a common

secular purpose. Efficient administration of the unemployment

compensation system is particularly enhanced through the

exemptions for religion because it eliminates the need for the

government to review employment decisions made on the basis of

religious rationales. These considerations are also true of the

exemptions listed in R.I. Gen. Laws 28-42-8(1). The exemption

for religions contained therein, when viewed in context, is

innocuous. It appears to serve the interest in facilitating the

administration of federal and state unemployment benefits

programs, and Rojas can point to no other evidence that the

"purpose that animated adoption" was to advance religion.

Edwards v. Aguillard, 482 U.S. 578, 585 (1987). In Walz, the 

Supreme Court upheld property tax exemptions for religious

institutions, arguing that such exemptions, although not required

by the Free Exercise Clause, were valid governmental actions

"productive of a benevolent neutrality which will permit

-11-

religious exercise to exist without sponsorship and without

interference." 397 U.S. at 669. Including religious

institutions within a set of unemployment tax exemption

recipients -- selected on the basis of reducing difficulties in

administering an unemployment insurance program -- reflects less

of a desire to sponsor religion than the direct property tax

exemptions upheld in Walz. 

Rojas's brief on appeal places much weight on Texas 

Monthly v. Bullock, 489 U.S. 1 (1989), which struck down a narrow 

Texas sales and use tax exemption for "'periodicals that are

published or distributed by a religious faith and that consist

wholly of writings promulgating the teaching of the faith and

books that consist wholly of writings sacred to a religious

faith.'" Id. at 5 (quoting Texas statute). Although Texas 

Monthly stands for the proposition that a subsidy that is granted 

only to religious publications and not to other similar

publications "lacks sufficient breadth to pass scrutiny under the

Establishment Clause," it also stated that "[i]nsofar as [a tax]

subsidy is conferred upon a wide array of non-sectarian groups as

well as religious organizations in pursuit of some legitimate

secular end, the fact that religious groups benefit incidentally

does not deprive the subsidy of the secular purpose and primary

effect mandated by the Establishment Clause." 489 U.S. at 14-15.

The exemption provisions at issue in the instant case fall within

the latter category. We decline Rojas's invitation to read Texas 

Monthly as requiring that a provision incidentally benefitting 

-12-

religion must grant a like benefit to every group that could also 

conceivably fall within the secular rationale for the exemption

provision. Texas Monthly nowhere requires this 

underinclusiveness analysis, but instead indicates that when a

"wide array" of groups are benefitted by a provision that pursues

a single, unifying, secular end, one of these groups may indeed

be religious institutions. In Texas Monthly, the other Texas 

sales tax exemptions did not serve the same purpose as the narrow

exemption for religious periodicals, and thus their existence

could not rescue the challenged exemption. By contrast, an

adequate array of groups are exempted under the FUTA and RIESA

provisions, reinforcing our conclusion that the religious

exemptions here serve the legitimate secular purpose of

facilitating the administration of the unemployment insurance

system.5

The second basic Establishment Clause concern is that

of avoiding the effective promotion or advancement of particular

religions or of religion in general by the government. Although
 

5 We therefore need not address the defendants' alternative
legal argument in defense of the exemptions, namely that even
were the exemption provided only to religions, it would still 
serve the legitimate secular purpose of decreasing governmental
entanglement with religion. It is well established that "it is a
permissible legislative purpose to alleviate significant
governmental interference with the ability of religious
organizations to define and carry out their religious missions."
Corporation of the Presiding Bishop of the Church of Jesus Christ 
of the Latter-Day Saints v. Amos, 483 U.S. 327, 335 (1987) 
(upholding exemption for religious institutions from Title VII's
prohibition against religious discrimination in employment for
secular activities of a nonprofit). But again, we do not need to
consider whether the exemptions at issue here are supported on
this accommodation rationale.

-13-

favoritism toward any particular sect is not an issue raised by

this appeal, it is not disputed that religious institutions as a

whole benefit from the FUTA and RIESA tax exemptions. An

incidental benefit to religion does not, however, render invalid

a statutory scheme with a valid secular purpose. See, e.g., 

Agostini, 117 S. Ct. at 2014; Zobrest v. Catalina Foothills Sch. 

Dist., 509 U.S. 1 (1993); Witters v. Washington Dept. of Servs., 

474 U.S. 481, 488-89 (1986); Walz, 397 U.S. at 664. It is also 

worth noting that while religious employers may be benefitted,

the employees of exempted religious institutions, as the

appellant has discovered, may be ineligible to enjoy the

attendant benefits of the unemployment compensation scheme.

Thus, the primary effect of the exemptions is not to force the

general public to subsidize religion. Rather, the primary

practical effect of the exemptions for religious institutions is

to exclude former employees of such institutions from

participating in the Rhode Island unemployment insurance system.

Finally, as the district court correctly reasoned,

entanglement concerns are in fact reduced through the adoption of

the exemptions in this case. See 928 F. Supp. at 165. 

II. Equal Protection II. Equal Protection

With regard to Rojas's claim that the FUTA and RIESA

tax exemptions for religious employers violate constitutional

equal protection principles, we affirm the district court for

substantially the grounds given in its opinion. See 928 F. Supp. 

at 166. Although Rojas recasts her equal protection claim

-14-

slightly on appeal, arguing that the district court erred by

focusing on the difference in treatment of employers rather than

on the difference in treatment of employees of exempt and non-

exempt entities, the rationality requirement under the equal

protection clause is equally lenient from either vantage. The

same considerations that led the district court to find no equal

protection violation with regard to the difference in treatment

of exempt and non-exempt employers applies to exempt and non-

exempt employees as well.

CONCLUSION CONCLUSION

For the reasons stated above, the decision of the

district court is affirmed.  affirmed 

-15-