Elwood STROUT, et al., Plaintiff,

v.

COMMISSIONER, MAINE DEPARTMENT OF EDUCATION, Defendant.

No. Civ. 97–259–P–H.

United States District Court, D. Maine.

Aug. 11, 1998.

Stephen C. Whiting, Douglas, Denham, Rogers & Hood, Portland, ME, Vincent P. McCarthy, The American Center for Laws and Justice–Northeast Inc., New Milford, CT, for Plaintiff.

Peter J. Brann, Assistant Attorney General, Augusta, ME, for Defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

Some school districts in Maine do not have public high schools. Instead, they have found it more cost effective to pay tuition for their resident students directly to public high schools in other districts or private schools. Maine statutes permit the procedure but allow such payments to be made only to nonsectarian schools. The issue in this case is whether such a limitation is constitutional. I conclude that it is.

### Facts

Maine law provides for compulsory education for school-aged residents. 20–A M.R.S.A. § 5001–A. Towns and school districts in Maine that do not operate their own public high schools can meet their statutory responsibilities by paying tuition to other public high schools or state-approved private schools at the legal tuition rate. 20–A M.R.S.A. § 5204(4). Under state law, only nonsectarian schools are eligible for receipt of public funds for tuition purposes. 20–A M.R.S.A. § 2951(2).

Each of the plaintiffs lives in Minot. The town of Minot is one of three towns comprising School Union No. 29, and neither Minot nor School Union No. 29 operates its own secondary school. These parents accordingly have chosen to send their children to St. Dominic's Regional High School, a private, Catholic sectarian school. After unsuccessfully seeking reimbursement for tuition paid to St. Dominic's in the fall of 1996, Mr. and Mrs. Strout, along with the other plaintiffs, brought this lawsuit against the Maine Commissioner of Education asserting that 20–A M.R.S.A. § 2951(2) is unconstitutional. Both sides have moved for summary judgment and agree that there are no genuine issues of material fact.

### Analysis

The general norm in Maine, as in most parts of the country, is for a school district to provide a secular high school education at a public high school financed, owned and operated by the school district. Such public high schools must be nonsectarian to comply with the Constitution if not with the electorate's preferences. If a state permits a school district to choose not to build and operate its own public high school, can it achieve the same objective of providing a secular education by allowing subsidy payments only to nonsectarian schools—whether they be public high schools in another district or private nonsectarian schools—while at the same time denying subsidy payments to sectarian schools? By all logic, the answer is yes, and the plaintiffs have provided no authority to the contrary.

I am not called upon here to decide whether a state may make *other* choices—for example, to make a payment to its students of high school age that they could then spend at any school they choose, whether sectarian or nonsectarian. The plaintiffs have provided caselaw that suggests the United States Supreme Court is not as restrictive as it once was in testing such programs against First Amendment restrictions. *See, e.g., Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 113 S.Ct.

2462, 125 L.Ed.2d 1 (1993); *Witters v. Washington Dep't of Servs. for the Blind,* 474 U.S. 481, 106 S.Ct. 748, 88 L.Ed.2d 846 (1986).[1] Whether Maine might permit its school districts ultimately to choose to provide such options and whether the practice would be constitutional is a case for another day. I decide today only whether Maine is constitutionally required to extend subsidies to sectarian schools. I find no authority for such a requirement. Although the plaintiffs have phrased their arguments in terms of free exercise claims, establishment clause claims, equal protection claims and substantive due process claims, I find it unnecessary to address these separately or to analyze the various tests that have been enumerated. The same answer is obvious for all.[2]

The plaintiffs certainly are free to send their children to a sectarian school. That is a right protected by the Constitution. *Pierce v. Society of Sisters,* 268 U.S. 510, 534, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). The law is clear, however, that they do not have the right to require taxpayers to subsidize that choice. That is true in a district that builds and operates its own public high school, *Brusca v. State Bd. of Education,* 332 F.Supp. 275, 277 (E.D.Mo.1971), *aff'd* 405 U.S. 1050, 92 S.Ct. 1493, 31 L.Ed.2d 786 (1972); it is also true in a district that has no public high school.[3]

The defendants' motion for summary judgment is GRANTED and the plaintiffs' motion for summary judgment is DENIED.

So ORDERED.[4]

---

1. The Wisconsin Supreme Court has recently upheld a school voucher program that can be used at sectarian as well as nonsectarian schools. *Jackson v. Benson,* 218 Wis.2d 835, 578 N.W.2d 602, 620 (1998).

2. The state superior court has recently reached the same conclusion. *See Bagley v. Maine Dep't of Education* (Mills, J.), No. CV97–484 (Me.Super.Ct. Apr. 20, 1998).

3. This is not a forum case like *Rosenberger v. Rector,* 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), and the analysis of that case does not apply.

4. The plaintiffs challenge the determination of what is a "sectarian" school and assert that the Department applies the prohibition to only "pervasively sectarian" schools, thereby creating excessive entanglement contrary to the First Amendment. On the summary judgment record, however, it is admitted that the Department accepts the self-identification provided by the schools and that there has never been a dispute over the issue. *See* Commissioner's Statement of Material Facts ¶ 23 (unopposed; *see* Local Rule 56). The entanglement issue is therefore specious.