QUESTION PRESENTED AND CONCLUSION Question: Does the treatment of the College Opportunity Fund stipend for purposes of calculating federal student financial aid impact whether the stipend will be treated as a state grant to institutions of higher education under TABOR?
Answer: No. The treatment of the College Opportunity Fund stipend for purposes of federal financial aid will not impact whether the stipend will be treated as a state grant to institutions of higher education under TABOR.
 BACKGROUND
1. The College Opportunity Fund
In 2004, the Colorado General Assembly enacted the College Opportunity Fund Act. The purpose of the Act was to improve higher education by changing the process by which post-secondary education is financed from that of funding institutions to funding individual students. Senate Bill 04-189, Section 1, (3) (f). To accomplish this, the Act created the College Opportunity Fund, which is a trust fund for the benefit of eligible undergraduate students. The Fund consists of a stipend for each undergraduate student in Colorado who applies for the stipend and who is admitted and registers to attend a state or participating private institution of higher education. § 23-18-201 (1), C.R.S. (2004). After the student has applied for the stipend and been admitted to the participating institution of his or her choice, the institution requests the Colorado Access Network to make a stipend payment to the institution on behalf of the eligible undergraduate student. The stipend payment is paid to the institution upon receipt of the student's authorization, and is then applied against the student's total in-state tuition. § 23-18-202
(5) (a), C.R.S. (2004).
According to the Act, it is the intent of the General Assembly that the amount of the stipend received by a state institution of higher education on behalf of a student not constitute a grant from the State of Colorado for purposes of Colo. Const. Art. X, § 20 (2) (d) ("TABOR"). § 23-18-202
(7), C.R.S. (2004). The significance of this lies in the fact that, if stipend monies are not considered direct grants to the institutions, those institutions will be able to meet the requirements for becoming enterprises contained in Colo. Const. Art. X, § 20 (2) (d).
Under the Act, "total in-state tuition" means the total amount of tuition that is paid to a state institution of higher education by or on behalf of a student, including the amount of the stipend. § 23-18-102
(13), C.R.S. (2004). The "stipend" is the amount of money per credit hour held in trust for and paid on behalf of the student from the Fund, and the "student's share of in-state tuition" means the amount of total in-state tuition, less the amount of the stipend. § 23-18-102 (11 — 12), C.R.S. (2004).
2. Eligibility for Federal Financial Aid
Those provisions of the Act outlined above affected a fundamental change in the method of funding higher education in Colorado. Whereas previously the state funded the institutions directly, now the state is funding the education of the individual student. One of the potential ramifications of this change is its effect on how federal financial aid is calculated for students receiving stipends from the College Opportunity Fund. This has prompted concern among some members of the higher education community regarding whether the treatment of the stipend for federal financial aid purposes will adversely affect whether the stipend is considered to be a state grant for purposes of TABOR. This concern centers on the fact that most third-party payments, such as private scholarships, are treated as resources in the federal financial aid process, and if the stipend is not also treated like a private scholarship, there will be an increased likelihood that at some future time a court may find that the stipends are actually grants to the institutions under TABOR, thus rendering it impossible for such institutions to satisfy the funding requirements for achieving enterprise status.
In general, a student's financial need for federal financial aid purposes is the difference between a student's "cost of attendance" (COA) and his or her expected family contribution. 34 CFR § 676.2 (b). Thus, determining COA is the cornerstone of establishing a student's financial need. Basically, the COA is an estimate of the student's educational expenses for the period of enrollment. Federal Financial Aid Handbook, Cost of Attendance (Budget), chapter 2, p. 3-15. COA includes the tuition and fees charged to the student, allowances for books and supplies, room and board costs, etc. 20 U. S. C.A. § 1087ll. However, for the tuition and fees component, it is acceptable to have different standard costs for different categories of students; for instance, a lower COA for in-state students, who have lower tuition, than for out-of-state students, who have higher tuition. Federal Financial Aid Handbook, Cost of Attendance (Budget), chapter 2, p. 3-15.
COA is determined by the amount of tuition for which the student is actually responsible. When a portion of a student's tuition and fees are paid by another organization or are waived, the student's COA is based on what the school is actually charging the student. However, when the student is charged for the tuition and fees, even if the charge is eventually paid by someone besides the student (i.e., a scholarship agency or other source of aid), then the tuition and fee amount is included in the COA. In such a case, the tuition and fee payment would be counted as a resource and included in estimated financial assistance. Federal Financial Aid Handbook, Cost of Attendance (Budget), chapter 2, p. 3-18. For instance, for prepaid tuition plans and college savings plans, if the money from the plan is intended to reduce the amount of tuition and fees charged to the students, then the COA would not include a tuition and fees component. On the other hand, if the money from the plan is used to pay tuition and fees charged to the student, then the COA is not affected. Id.
The federal Department of Education has ruled that the College Opportunity Fund stipend should not count as part of the COA for in-state students in public institutions. Thus, for these students, the COA is based on the amount of in-state tuition actually charged to the student and not on total in-state tuition. The reason for this determination was practical if the stipend was included as part of the financial aid calculation, it could adversely affect how much federal aid students would qualify for, and could raise issues regarding taxability of the stipend. Also, it could adversely affect students in some situations where a student drops out and aid must be refunded to the federal government. However, some members of the higher education community have raised the concern that if the stipend is not counted as COA, it will adversely affect whether the stipend is considered to be a state grant for purposes of TABOR.
 DISCUSSION
Under the Act, the intent of the General Assembly is that the stipend not be considered a grant from the State of Colorado for purposes of Colo. Const. Art. X, § 20 (2) (d), which defines an "enterprise" as "a government-owned business authorized to issue its own revenue bonds and receiving under 10% of annual revenue in grants from all Colorado state and local governments combined". The importance of the stipend not being considered a grant under TABOR is that it allows state institutions of higher education to qualify for enterprise status.
In order to meet the enterprise requirement, the stipends from the College Opportunity Fund must be indirect government benefits to the institutions rather than direct state subsidies that would be government grants under TABOR. While Colorado case law provides no guidance for resolving this issue under TABOR, courts have examined the characteristics of direct and indirect government financial aid in other contexts. In Zelman v. Simmon-Harrris, 536 U. S. 639, 122 S. Ct. 2460
(2002), the United States Supreme Court, for purposes of Establishment Clause analysis, distinguished between government programs that provide aid directly to religious schools from government programs that provide aid to individuals who then direct the aid to institutions of their own choosing, which can include religious schools. The Court found that the latter could be sustained because these programs were the result of private choice:
 Where a government aid program is neutral with respect to religion, and provides assistance directly to a broad class of citizens who, in turn, direct government aid to religious schools wholly as a result of their own genuine and independent private choice, the program is not readily subject to challenge under the Establishment Clause. A program that shares these features permits government aid to reach religious institutions only by way of the deliberate choices of numerous individual recipients. The incidental advancement of a religious mission, or the perceived endorsement of a religious message, is reasonably attributable to the individual recipient, not to the government, whose role ends with the disbursement of benefits.
Zelman, 536 U. S. at 652. Likewise, in Witter v. Washington Dept. ofServ. for Blind, 474 U. S. 481, 106 S. Ct. 748 (1986), the U. S. Supreme Court used this reasoning to reject an Establishment Clause challenge to a vocational scholarship program that provided tuition aid to a student studying at a religious institution, finding that "[a]ny aid . . . that ultimately flows to religious institutions does so only as a result of the genuinely independent and private choices of aid recipients."Witters, 474 U. S. at 487.
The Colorado Supreme Court adopted similar reasoning in AmericansUnited for Separation of Church and State Fund, Inc. v. State,648 P.2d 1072, 1083 (Colo. 1982), where it held that a grant program designed to provide financial assistance to individual students was not a form of direct governmental aid to private and sectarian institutions:
 [a]s already noted, the statutory program is designed for the benefit of the student, not the educational institution. The program is non-restrictive in the sense that it is available to students at both public and private institutions of higher learning. Moreover, the financial assistance is distributed under statutory conditions calculated to significantly reduce any risk of fallout assistance to the participating institution.
Id. At p. 1082. Similarly, in In re Interrogatory by the Governor,814 P.2d 875 (Colo. 1991), the Colorado Supreme Court held that a bill appropriating funds to intergovernmental agreements for a proposed United Airlines maintenance facility did not run afoul of the constitutional prohibition against state aid to private companies, because there was no "direct" donation, grant or aid from the state to the private company.Id. at 883.
Based on the criteria drawn from these cases, it appears that the stipend is not a grant for TABOR purposes because stipends drawn from the College Opportunity Fund result in an indirect government benefit to the educational institutions rather than a direct governmental grant. The College Opportunity Program does not provide a grant to any higher education institution. Rather, the stipend provides financial assistance on behalf of the student, and the direction of the stipend to any particular institution is left to the genuinely independent and private choices of the students, who choose which public or private institution in which to enroll. § 23-18-202 (5) (a), C.R.S. (2004).
The fact that, for purposes of calculating eligibility for federal financial aid, the amount of the stipend is not included in the COA does not affect this analysis. In this respect, it is important to remember that COA is not a determination of the actual amount of tuition. Rather, it is part of the calculation of the actual need of the student for purposes of financial aid. 34 CFR § 676.2 (b). For these purposes, it is entirely appropriate that the federal government would use the "student's share of in-state tuition" rather than "total in — state tuition", since it is the former amount that more closely reflects the student's actual out — of-pocket educational expenses for purposes of "need based" federal grants.
Under the Zelman and Americans United analysis outlined above, it is not necessary that the financial assistance become the property of the student in order to avoid direct government grants; indeed, this is not the situation in any of the cases cited above. Rather, the determining factor in rendering the monies an indirect government benefit to the educational institutions rather than a direct governmental grant is that the money is a) for the benefit of the student; and b) is directed to the educational institution as a result of the student's genuinely independent and private choice. These factors are present in the College Opportunity Fund Program whether or not the stipend is excluded from COA for federal financial aid purposes, or is included in the COA and considered to be a separate financial resource. Consequently, the federal government's calculation of COA has no effect on the TABOR grant analysis.
 CONCLUSION
Our conclusion is that the treatment of the College Opportunity Fund stipend for purposes of calculation of the Cost of Attendance for federal financial aid programs does not impact whether or not the stipend will be treated as a state grant to institutions of higher education under TABOR.
Issued this 28th day of July, 2005.

 ___________________
 JOHN W. SUTHERS
 Colorado Attorney General