# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 14, 2005          Decided March 8, 2005

No. 04-5317

AMERICAN JEWISH CONGRESS,
APPELLEE

v.

CORPORATION FOR NATIONAL AND COMMUNITY SERVICE,
APPELLANT

UNIVERSITY OF NOTRE DAME,
APPELLANT

———

Consolidated with
No. 04-5318

———

Appeals from the United States District Court
for the District of Columbia
(02cv01948)

———

    *Gregory G. Katsas*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellant Corporation for National and Community Service. With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Robert M. Loeb* and *Lewis S. Yelin*, Attorneys.

*Michael A. Carvin* argued the cause for appellant University of Notre Dame.  With him on the briefs were *Stephen J. Brogan* and *Mary Beth B. Young*.

*Daniel S. Pariser* argued the cause for appellee American Jewish Congress.  With him on the brief were *Irvin B. Nathan*, *Donald R. Gordon* and *Robyn M. Holtzman*.

*Ayesha N. Khan*, *Richard B. Katskee*, *Alex J. Luchenitser*, *Jeffrey P. Sinensky*, *Elliot M. Mincberg*, and *Judith E. Schaeffer* were on the brief for *amici curiae* Americans United for Separation of Church and State in support of affirmance.  *Martin E. Karlinsky* entered an appearance.

Before: EDWARDS, HENDERSON, and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*:  The First Amendment provides that "Congress shall make no law respecting an establishment of religion."  Laws intended to advance or inhibit religion, or having either effect, violate the Establishment Clause. *Agostini v. Felton,* 521 U.S. 203, 222-23 (1997).  The issue in this appeal from an order granting summary judgment in favor of the American Jewish Congress ("AJC") is whether portions of the AmeriCorps Education Awards Program, a nationwide community service program operated by the Corporation for National and Community Service, have the effect of advancing religion.

The Corporation funds programs designed to "expand educational opportunity by rewarding individuals who participate in national service with an increased ability to pursue higher education or job training."  42 U.S.C. § 12501(b)(3).  No

financial assistance from the Corporation may be used "to provide religious instruction, conduct worship services, or engage in any form of proselytization." 42 U.S.C. § 12634(a). Those running an approved program may not discriminate on the basis of religion in selecting program participants. 42 U.S.C. §§ 12634(a), 12635(c)(1).

The Corporation created the AmeriCorps Education Awards Program "to expand opportunities for individuals to serve as AmeriCorps Members and earn educational benefits, broaden the network of national service programs and strategies, and increase the number of communities joining with AmeriCorps to better meet their education, public safety, environmental, and other human needs." 61 Fed. Reg. 46,628 (Sept. 4, 1996). An organization (such as a local government or a non-profit organization) proposing to sponsor a national service program must send an application to the Corporation. Proposed service programs must "address unmet human, educational, environmental, or public safety needs and produce a direct benefit for the community in which the projects are performed." 42 U.S.C. § 12582(b)(4). If the Corporation approves the application, the sponsoring organization may recruit individuals to fill its approved national service positions.

Individuals wishing to receive an Education Award perform community service in a program sponsored by an organization approved by the Corporation. The Corporation offers $4,725 in financial aid to those individuals if they complete at least 1700 hours of service in an approved position. The individuals may use the award for education-related expenses, such as graduate school tuition and the repayment of student loans. 42 U.S.C. § 12604(a).

This case involves only individuals who fulfill their service requirement as teachers in religious schools. The University of

Notre Dame, a party to this case, sponsors an approved AmeriCorps program that trains individual AmeriCorps participants and places them in needy Catholic schools, where they teach a variety of subjects, including science, mathematics, foreign languages, English, and religion. Brief of Appellant Notre Dame at 2. AJC thinks that the AmeriCorps Education Awards Program violates the Establishment Clause because individuals, such as those at Notre Dame, who are fulfilling their service requirement by teaching secular subjects in religious schools, also may teach religion courses.

AJC objects to another aspect of the AmeriCorps Education Awards Program. In addition to providing training to individual participants, organizations incur a variety of other responsibilities in sponsoring an AmeriCorps national service program. To help defray the expense of training participants and other administrative costs, the Corporation provides grants in the amount of $400 per AmeriCorps participant to all organizations that sponsor participants -- religious and non-religious alike. AJC believes the $400 grants to religiously-affiliated organizations violate the Establishment Clause.

The district court granted AJC's motion for summary judgment and denied the cross motions of the Corporation and Notre Dame. *Am. Jewish Cong. v. Corp. for Nat'l & Community Serv.*, 323 F. Supp. 2d 44 (D.D.C. 2004) ("*AJC*"). The court found that the practice of permitting individual participants to teach religion in addition to secular subjects and the $400 cash grants to sponsoring organizations result "in impermissible government indoctrination in violation of the establishment clause of the First Amendment." *Id.* at 45-46. Concluding that prevailing Establishment Clause precedent permits both portions of the AmeriCorps program, we reverse.

5

I.

While claiming to have standing to bring this suit because of its status as a taxpayer, Brief of Appellee at 62, AJC describes itself as "a non-profit organization," *id.* at iii, which makes one wonder whether it pays any federal taxes. No matter. Even if it does not, it is fair to assume that AJC's members do. *Meek v. Pittenger*, 421 U.S. 349, 356 n.5 (1975). Notre Dame questions AJC's standing, not on this basis, but on the ground that it has not brought itself within the exception to the general rule that taxpayers do not have standing to challenge the manner in which the government spends its tax revenue. *Frothingham v. Mellon*, 262 U.S. 447, 486-87 (1923). The exception is for taxpayer suits claiming that Congress exercised its Article I, § 8, taxing and spending power in violation of the Establishment Clause. *Flast v. Cohen*, 392 U.S. 83, 102 (1968).

Whatever doubt there might have been before *Bowen v. Kendrick*, 487 U.S. 589 (1988), it is now clear that the exception includes more than just taxpayer suits, based on the Establishment Clause, attacking taxing-and-spending statutes on their face. Also within the exception are taxpayer actions claiming a violation of that constitutional provision because of the manner in which the Executive Branch is administering the statute. *Id.* at 618-20. A "claim that funds appropriated by Congress are being used improperly by individual grantees" is no less "a challenge to congressional taxing and spending power simply because the funding authorized by Congress has flowed through and been administered by" an executive official. *Id*. at 619.

Notre Dame thinks this case is distinguishable from *Bowen* because AJC alleged that some, but not all, of the Corporation's actions violated not only the Establishment Clause, but also the National Community Service Act and the regulations

thereunder. *See In re United States Catholic Conference,* 885 F.2d 1020 (2d Cir. 1989). The distinction cannot be sustained. Despite a suggestion in its complaint, AJC has made clear that it relies solely on the Establishment Clause. Brief of Appellee at 63. No argument it has made to us rests on a statutory violation; all are aimed at the constitutionality of the Corporation's administration of the AmeriCorps program and the manner in which it allocates funds. Those arguments persuaded the district court and framed its decision. As the case now stands, it therefore fits comfortably within the rationale of *Bowen*: "The [National Community Service Act] is at heart a program of disbursement of funds pursuant to Congress' taxing and spending power, and [AJC] calls into question how the funds authorized by Congress are being disbursed pursuant to the [Act's] statutory mandate." 487 U.S. at 619-20. It follows that there is "a sufficient nexus between the taxpayer's standing as a taxpayer and the congressional exercise of taxing and spending power, notwithstanding the role the [Corporation] plays in administering the statute." *Id.* at 620.

## II.

AJC's principal complaint is that individuals, while teaching secular subjects at religious schools under the AmeriCorps program and receiving credit toward an Educational Award, may also teach religious subjects. *See* Compl. ¶¶ 4, 63-66. Under *School District of City of Grand Rapids v. Ball*, 473 U.S. 373 (1985), according to AJC, if an AmeriCorps participant decides to teach religion, the decision is attributable to the government. *Ball* struck down two school district programs -- a "Shared Time" program and a "Community Education" program. AJC focuses on the "Community Education" program in which the school district hired religious school teachers to teach secular classes in after-school programs in religious schools. The Supreme Court held

that this program violated the Establishment Clause because it created a "symbolic union" between government and religion; "the students would be unlikely to discern the crucial difference between the religious school classes and the 'public school' classes, even if the latter were successfully kept free of religious indoctrination." *Id.* at 391-92.

Much of the reasoning in *Ball* has been overturned. *See Agostini v. Felton*, 521 U.S. 203, 236 (1997). We believe the Supreme Court's more recent decisions upholding programs of true private choice, particularly *Zelman v. Simmons-Harris*, 536 U.S. 639, 649 (2002), control this case. *See also Zobrest v. Catalina Foothills School Dist.,* 509 U.S. 1 (1993); *Witters v. Washington Dep't of Servs. for Blind,* 474 U.S. 481 (1986); *Mueller v. Allen,* 463 U.S. 388 (1983). When a government program is neutral toward religion and "provides assistance directly to a broad class of citizens who, in turn, direct government aid to religious schools wholly as a result of their own genuine and independent private choice," the Establishment Clause is not violated. *Zelman*, 536 U.S. at 652. In that situation, no "objective observer familiar with the full history and context" of the program would believe that the aid flowing to the religious institution carries with it "the *imprimatur* of government endorsement." *Id.* at 655.

The AmeriCorps participants and the grantees are, and must be, chosen without regard to religion. The Education Awards are available to a broad class of citizens. Any citizen at least 17 years old who holds a high school diploma or its equivalent and is selected to fill a national service position may qualify. 42 U.S.C. § 12591. Individual participants who elect to teach religion in addition to secular subjects do so only as a result of "their own genuine and independent private choice." The AmeriCorps program creates no incentives for participants to teach religion; they may count only the time they spend engaged

in non-religious activities toward their service hours requirement. And if they do teach religious subjects, they are prohibited from wearing the AmeriCorps logo when they are doing so. In this situation, no reasonable person, "knowing all the circumstances," *Sao Paulo State of Federative Republic of Brazil v. Am. Tobacco Co.*, 535 U.S. 229, 232 (2002), would believe that a participant's choice to teach a religion course had -- in *Zelman*'s words -- "the *imprimatur* of government endorsement." 536 U.S. at 655.

AJC sees two reasons why the AmeriCorps program should not be considered a program of private choice. The first is that the AmeriCorps program is not neutral. The district court agreed, in part because an Internet search had revealed that three grantees were requiring AmeriCorps participants to "be of a particular faith." *AJC*, 323 F. Supp. 2d at 60. These grantees were violating the governing statute and regulations, 42 U.S.C. § 12635(c); 45 C.F.R. § 2540.210; the Corporation took corrective action when it discovered their postings; and before the district court rendered its decision, they had lifted the restriction. *AJC*, 323 F. Supp. 2d at 58 n.8; Brief of Appellant National Corporation at 35.

The district court also thought neutrality was missing because the Corporation uses "highly discretionary criteria" to choose AmeriCorps grantees. *AJC*, 323 F. Supp. 2d at 60. AJC strikes much the same note. Why, as a matter of constitutional law, this ought to be significant is not clear. The Supreme Court has not treated discretionary distribution of government funds as lacking in neutrality. In the program upheld in *Bowen v. Kendrick* -- the Adolescent Family Life Act -- the Secretary of Health and Human Services awarded grants based, in part, on what can only be viewed as subjective determinations. *See* 42 U.S.C. §§ 300z-1(3), 300z-2(a) (1982); *see also Bowen*, 487 U.S. at 597 (noting that the Secretary awarded 141 grants from

a pool of more than 1000 applications). We are aware of nothing in the law requiring that government aid, to pass muster under the Establishment Clause, must be handed out according to objective criteria only. All the law requires is that the government distribute funds in a manner that is neutral with respect to religion. *See Zelman*, 536 U.S. at 652; *Agostini*, 521 U.S. at 230-31. Perhaps discretionary criteria, in some circumstances, might serve as a pretext for the government to "grant special favors that might lead to a religious establishment." *Mitchell v. Helms*, 530 U.S. 793, 810 (2000) (plurality). But AJC did not allege that the Corporation had used its discretionary authority to favor religious organizations, and it conceded at oral argument that there was no evidentiary support for such an allegation. We conclude, therefore, that the program is neutral.

AJC's other argument is that a participant's decision to perform his national service obligation in a religious school is not "a genuine and independent private choice." *Zelman*, 536 U.S. at 652. "Eligibility for an AmeriCorps award is established," AJC argues, "only through participation in a limited number of the government's hand-picked, pre-selected programs." Brief of Appellee at 50. The relevant question is whether participants seeking to earn an Educational Award possess a genuine independent choice between religious and non-religious organizations in which to perform their national service. Of course the number of such opportunities is, as AJC puts it, "limited." It could hardly be unlimited. The important points are (1) that there are numerous AmeriCorps teaching positions in public and private secular schools; and (2) that there is no evidence of any participant who wanted to teach in a secular school, but was impermissibly channeled to a religious school. A program may be one of "true private choice" even when more religious than non-religious choices are available. In *Zelman*, 82 percent of the eligible private schools

participating in the voucher program were religious schools and 96 percent of the students who took advantage of vouchers attended religious schools. 536 U.S. at 655-58. Here, only 328 of the 1608 schools employing AmeriCorps participants as teachers in 2001 were religious schools. When enough non-religious options exist, those participants who choose to teach in religious schools do so only as a result of their own genuine and private choice.

AJC also faulted the Corporation for failing to police its prohibition against a participant's counting time spent teaching religion courses toward the service hours requirement. In *Mitchell v. Helms*, four Justices concluded that neutrality is the touchstone of Establishment Clause inquiries in government aid cases, and that when eligibility for aid is determined neutrally, "any use of that aid to indoctrinate cannot be attributed to the government and is thus not of constitutional concern." 530 U.S. at 820. The two concurring Justices in *Mitchell* concluded that *de minimis* diversion of aid tends to show that a program's safeguards are, in fact, working. *Id.* at 865-66 (O'Connor, J., concurring in judgment). In the district court, AJC presented evidence suggesting that, since 1999, four AmeriCorps participants may have counted time spent teaching religion toward their service hour requirement. *See* AJC Statement of Undisputed Facts ¶¶ 92-126. The Corporation disputed the evidence. *AJC*, 323 F. Supp. 2d at 55. Even if we credited AJC's version, it proves nothing of significance. During the same period, one sponsoring organization alone -- the Catholic Network of Volunteer Service -- placed 492 AmeriCorps participants as teachers in religious schools. AJC Statement of Undisputed Facts ¶ 80. AJC therefore failed to substantiate its claim that the present monitoring of participants' timekeeping is so ineffective, and the violations so pervasive, that the AmeriCorps program must be seen as one in which the government is giving participants Education Awards for hours

they spend teaching religion.

### III.

This leaves the question of the $400 program management grants to organizations operating service programs. The $400 grants reimburse grantees for a portion of the costs they incur when complying with various AmeriCorps requirements. The Supreme Court upheld a similar system in *Committee for Public Education & Religious Liberty v. Regan*, 444 U.S. 646, 657-58 (1980), and rejected the idea that the Establishment Clause required it to invalidate "reimbursements simply because they involve payments in cash." The program in *Regan* provided "direct cash reimbursement" to religious and secular nonpublic schools for performing various testing and reporting services mandated by state law. *Id.* at 657. Here, detailed AmeriCorps guidelines require, among other things, that grantees train participants, provide them with adequate supervision by qualified supervisors, keep various records, and make regular reports to the Corporation. The $400 is meant to defray some of the costs.

AJC focuses on the lack of auditing or accounting of the AmeriCorps grants. Brief of Appellee at 58-59. The program in *Regan* included extensive auditing to verify that the schools did not receive public funds in excess of the expenditures incurred as part of the testing. 444 U.S. at 650 n.3, 659-60. Here audits would be senseless. The evidence showed that $400 is much less than the actual administrative costs grantees incur per participant. In Notre Dame's program, for instance, the $400 grants cover only about eight percent of the salaries of those who train the AmeriCorps participants to teach in elementary schools. AJC marshaled no evidence to show otherwise nor did it make any allegation to this effect.

*Regan* therefore controls this aspect of the case. The government does not promote religion in violation of the Establishment Clause when it reimburses all grantees, religious and secular alike, for a portion of the costs they incur in complying with the requirements of the AmeriCorps program.

\* \* \*

For the reasons stated, the district court's judgment is

*Reversed.*